**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KARILIE HERRERA, FRANCHESCA MORALES,
and CAROLYN RICHARDSON,

                 Plaintiffs,

                 -v-

UNITED STATES OF AMERICA, COLIN
AKPARANTA, NORMAN REID, LIEUTENANT
WEST, STACEY HARRIS, OFFICER COLLIER,
TROY HILL, OFFICER LEWIS, and JOHN/JANE
DOES 1-10,

                 Defendants.

20 Civ. 10206 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF MOVING**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2691/2728
Fax: (212) 637-2717
E-mail: Allison.Rovner@usdoj.gov
       Zachary.Bannon@usdoj.gov

ALLISON ROVNER
ZACHARY BANNON
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................II

TABLE OF AUTHORITIES .......................................................................................... III

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

    I.    PLAINTIFFS' ALLEGATIONS ............................................................................. 2

    II.   THE BOP'S SEXUAL ASSAULT PREVENTION PROTOCOL ................................... 3

    III.  PLAINTIFFS' CLAIMS ..................................................................................... 6

LEGAL STANDARD........................................................................................................ 7

ARGUMENT .................................................................................................................. 8

    I.    PLAINTIFFS LACK A BIVENS REMEDY FOR THEIR CONSTITUTIONAL CLAIMS ..................... 8

        A.   Plaintiffs' Claims Present a New Context ................................................... 10

        B.   Special Factors Counsel Against Extending Bivens.................................... 13

    II.   PLAINTIFFS' FTCA CLAIMS CHALLENGE DISCRETIONARY FUNCTIONS AND ARE BARRED 16

        A.   The MCC's Sexual Assault Response and Prevention Is Not Compelled by Regulation 17

        B.   The MCC's Supervisory, Disciplinary, and Retention Policies Surrounding Sexual Abuse Are Susceptible to Policy Analysis........................................................ 21

        C.   Any Claim for Failing to Report a Suspicion of Sexual Misconduct Lacks a Private Analogue. ...................................................................................................... 22

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Achcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 7, 10

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009) ........................................................................... passim

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 7

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ................................................................................. 11, 14, 22

*Belt v. Fed. Bureau of Prisons*,
   336 F. Supp. 3d 428 (D.N.J. 2018) .................................................................... 10

*Berkovitz v. United States*,
   486 U.S. 531 (1988) ............................................................................................. 18

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ...................................................................................... passim

*Burkhart v. Wash. Metro. Area Transit Auth.*,
   112 F.3d 1207 (D.C. Cir. 1997) ......................................................................... 21

*Burnam v. Smith*,
   787 F. App'x 387 (9th Cir. 2019) ................................................................. 11, 12

*C.P. Chem. v. United States*,
   810 F.2d 34 (2d Cir. 1987) ................................................................................ 24

*Cannenier v. Skipper-Scott*,
   No. 18 Civ. 2383 (LGS), 2019 WL 764795 (S.D.N.Y. Feb. 20, 2019) ........... 12, 13

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002) ................................................................................ 7

*Carlson v. Green*,
   446 U.S. 14 (1980) .............................................................................................. 8, 9

*Chambers v. Herrera*,
   No. 17 Civ. 2564 (KES), 2019 WL 4391135 (C.D. Cal. July 9, 2019) ............ 11, 14

*Chen v. United States,*
   854 F.2d 622 (2d Cir. 1988)......................................................................... 23

*Coulthurst v. United States,*
   214 F.3d 106 (2d Cir. 2000)............................................................ 16, 17, 18, 21

*Cuoco v. Moritsugu,*
   222 F.3d 99 (2d Cir. 2000)........................................................................... 10

*Darnell v. Pineiro,*
   849 F.3d 17 (2d Cir. 2017)........................................................................... 10

*Davis v. Passman,*
   442 U.S. 228 (1979)...................................................................................... 9

*Dudley v. United States,*
   No. 19 Civ. 317, 2020 WL 532338 (N.D. Tex. Feb. 3, 2020).......................... 15, 24

*Dykstra v. U.S. Bureau of Prisons,*
   140 F.3d 791 (8th Cir. 1998) ...................................................................... 19, 22

*Farmer v. Brennan,*
   511 U.S. 825 (1994).................................................................................. 10, 12

*Hartman v. Moore,*
   547 U.S. 250 (2006)..................................................................................... 13

*Hernandez v. Mesa,*
   140 S. Ct. 735 (2020).................................................................................... 8

*Hunt v. Matevousian,*
   336 F. Supp. 3d 1159 (E.D. Cal. 2018)....................................................... 10, 14

*Leone v. United States,*
   690 F. Supp. 1182 (E.D.N.Y. 1988) ............................................................. 21

*Li v. Aponte,*
   No. 05 Civ. 6237 (NRB), 2008 WL 4308127 (S.D.N.Y. Sept. 16, 2008) ............... 20

*Long Island Radio Co. v. NLRB,*
   841 F.2d 474 (2d Cir. 1988)........................................................................... 8

*Makarova v. United States,*
   201 F.3d 110 (2d Cir. 2000)........................................................................... 7

*Martinez v. D'Agata*,
No. 16 Civ. 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) .......................................... 10

*Matthias v. United States*,
475 F. Supp. 3d 125 (E.D.N.Y. 2020) ...................................................................................... 18

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016)..................................................................................................... 24

*Molchatsky v. United States*,
713 F.3d 159 (2d Cir. 2013)..................................................................................................... 16

*Morgan v. Shivers*,
No. 14 Civ. 7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018)...................... 11, 15, 23

*Negron v. United States*,
No. 19 Civ. 5442 (PMH), 2020 WL 5634304 (S.D.N.Y. Sept. 21, 2020)............................... 24

*Oden v. True*,
No. No. 18 Civ. 600 (GCS), 2020 WL 4049922 (S.D. Ill. July 20, 2020) ............. 10, 11, 12, 13

*Ojo v. United States*,
No. 15 Civ. 6089 (ARR), 2018 WL 3863441 (E.D.N.Y. Aug. 14, 2018) ............................... 16

*Pell v. Procunier*,
417 U.S. 817 (1974)................................................................................................................. 22

*Reichle v. Howards*,
566 U.S. 658 (2012)................................................................................................................. 13

*Riascos-Hurtado v. United States*,
No. 09 Civ. 0003 (RJD), 2015 WL 3603965 (E.D.N.Y. June 5, 2015)................................... 24

*Rivera v. Samilo*,
370 F. Supp.3d 362 (E.D.N.Y. 2019) ...................................................................................... 15

*Romero v. City of New York*,
839 F. Supp. 2d 588 (E.D.N.Y. 2012) ..................................................................................... 16

*Saint-Guillen v. United States*,
657 F. Supp. 2d 376 (E.D.N.Y. 2009) ................................................................................ 19, 20

*Salafia v. United States*,
578 F. Supp. 2d 435 (S.D.N.Y. 2008).................................................................................. 20, 23

*Smith v. U.S. Coast Guard*,
  220 F. Supp. 2d 275 (S.D.N.Y. 2002)...................................................................... 19

*Tangreti v. Bachmann*,
  983 F.3d 609 (2d Cir. 2020)............................................................................... 10, 11

*Tilga v. United States*,
  No. 14 Civ. 256 (JAP), 2014 WL 12783121 (D.N.M. Dec. 5, 2014)...................................... 24

*United States v. Gaubert*,
  499 U.S. 315 (1991)..................................................................... 17, 19, 21, 22

*United States v. Sherwood*,
  312 U.S. 584 (1941)........................................................................................... 7

*Walker v. Schult*,
  463 F. Supp. 3d 323 (N.D.N.Y. 2020) ............................................................... 11, 12

*White v. Hess*,
  No. 14 Civ. 03339 (CBA), 2020 WL 1536379 (E.D.N.Y. Mar. 31, 2020) ........................... 10

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)................................................................................. passim

**Statutes**

18 U.S.C. § 2246(3) .................................................................................................. 1

18 U.S.C. § 2246(2) .................................................................................................. 1

28 U.S.C. §§ 1346 ..................................................................................................... 2

34 U.S.C. § 30301(13) ............................................................................................ 15

34 U.S.C. § 30307(a)(1)............................................................................................ 4

34 U.S.C. § 30302(7) .............................................................................................. 14

**Regulations**

28 C.F.R. § 115.13 ................................................................................................. 17

28 C.F.R. § 115.13(a)...................................................................................... 6, 18, 21

28 C.F.R. § 115.61(a)......................................................................................... passim

28 C.F.R. § 115.62 ............................................................................................... 6, 19

28 C.F.R. § 115.65 .................................................................................................... 5, 19

28 C.F.R. § 115.71 .................................................................................................... 5, 20

28 C.F.R. § 115.71(a) ................................................................................................. 19

28 C.F.R. § 115.76(a) ............................................................................................ 20, 21

28 C.F.R. § 542.10(a) ................................................................................................. 15

28 C.F.R. Part 115 ........................................................................................................ 4

## PRELIMINARY STATEMENT

On March 4, 2020, Colin Akparanta ("Akparanta") pled guilty to one count of abusive sexual conduct in violation of 18 U.S.C. § 2246(3) and one count of deprivation of civil rights in violation of 18 U.S.C. §§ 2246(2) and (3), for sexually abusing seven inmates at the Metropolitan Correctional Center ("MCC") between 2012 and 2018. The Moving Defendants[1] recognize the harm Akparanta caused to his many victims through his criminal acts of violence. As then-United States Attorney for the Southern District of New York Geoffrey Berman described it: "Colin Akparanta was a predator in uniform . . . . No inmate in a Bureau of Prisons [("BOP")] facility should fear sexual abuse at the hands of a correctional officer, and thankfully, Akparanta will have no more victims."[2]

This motion does not question the reprehensible nature of Akparanta's conduct while he was a correctional officer at the MCC. Instead, it addresses a narrow question: Has Congress authorized a damages suit based on the alleged failure of a sexual abuser's co-workers and supervisors to detect and prevent the abuser's conduct? As explained below, Congress has not. First, a remedy pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), should not be applied to this new context to allow for a personal-capacity suit against an abuser's co-workers and supervisors. The Supreme Court has counseled against extending *Bivens* remedies to new circumstances, and Congress has already comprehensively addressed the problem of sexual abuse in prison by passing the Prison Rape

---

[1] "Moving Defendants" refers to the United States of America (the "United States" or the "Government"), Norman Reid ("Reid"), Troylinda Hill ("Hill"), Stacey Harris ("Harris"), Shakiyl Collier ("Collier"), Nicole Lewis ("Lewis"), and Ronald West ("West"). This Office does not represent Akparanta or move on his behalf.

[2] *See* Press Release, at https://www.justice.gov/usao-sdny/pr/federal-correctional-officer-arrested-sexually-abusing-female-inmates.

1

Elimination Act of 2003 ("PREA") without providing a private damages remedy. Second, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 1402, 2401, 2671-80, entrusts personnel decisions, including those involving the supervision and discipline of employees and the investigation of employee misconduct, to the discretion of the federal government. Accordingly, Karilie Herrera, Franchesca Morales, and Carolyn Richardson's (together, "Plaintiffs'") Complaint should be dismissed in full.

## FACTUAL BACKGROUND

### I.   Plaintiffs' Allegations

Plaintiffs allege that they were subjected to sexual violence at the hands of Akparanta while inmates at the MCC in 2017 and 2018. Dkt. No. 1 ("Compl.") ¶¶ 68-111. Specifically, they allege that, consistent with his modus operandi between 2004 and when the BOP suspended or terminated him in December of 2018, Compl. ¶¶ 39-48, 111, Akparanta would bring them to blind spots within the MCC, orchestrate unjustified lockdowns, and bring contraband to them, so that he could perpetrate and cover up sexual abuse against them, *id.* ¶¶ 39-48.

Plaintiffs allege that each of the individual Moving Defendants received reports of Akparanta's misconduct at some point between 2004 and 2017, but that they failed to take actions that would result in Akparanta's termination. Compl. ¶ 53. For example, Plaintiffs allege that a female inmate shared her "discomfort regarding . . . Akparanta's sexual advances" with Hill in 2012, but Hill failed to take action to prevent what would result in a proper investigation of Akparanta's behavior. *Id.* ¶ 54. Similarly, they allege that "various female inmates" complained about Akparanta to Collier "in 2017 and prior thereto," but Collier failed to take corrective action. *Id.* ¶ 55. And once in 2017, Plaintiffs allege that Lewis, a counselor at the MCC, made a statement to the effect that she did not want to receive complaints about inmates being touched by MCC officers, evincing that she had received similar complaints in the past but failed to take corrective

2

action. *Id.* ¶ 100. In the alternative, Plaintiffs allege that these MCC employees did voice concerns about Akparanta to supervisors, but that those supervisors "refused to take any action to investigate, supervise, discipline, or penalize . . . Akparanta." *Id.* ¶ 56.

In addition to these allegations regarding direct reports of Akparanta's misconduct, Plaintiffs allege that supervisory officials were not sufficiently diligent in their efforts to detect and prevent Akparanta's sexual abuse. For example, they allege that West had responsibilities that included monitoring security cameras at the MCC, but he did not detect Akparanta's misconduct despite his knowledge that Akparanta would bring inmates to areas within the MCC that were not captured by security cameras. Compl. ¶¶ 7, 96. Relatedly, Plaintiffs allege that Reid and Harris "were aware of warning signs that . . . Akparanta was abusing inmates including that he was bringing contrabands to certain inmates," but failed to take corrective action. *Id.* ¶¶ 7, 102-06.[3] Finally, Plaintiffs allege that the MCC was aware that individuals were capable of sexually abusing inmates in the manner that Akparanta did because, in 2015, an MCC employee pleaded guilty to the commission of sexual abuse of inmates. *Id.* ¶¶ 61-63. Nonetheless—Plaintiffs' allege—the MCC failed to take corrective action, "including by installing additional security cameras to eliminate . . . blind spots," that could have prevented future misconduct. *Id.* ¶ 66.

## II.   The BOP's Sexual Assault Prevention Protocol

Over the period that Akparanta worked at the MCC, a shifting framework of regulations and policy statements—derived from the 2003 enactment of the PREA—governed MCC officials' responsibilities in responding to and investigating reports of sexual misconduct. In April 2005, the BOP promulgated Program Statement 5324.06 (the "2005 Statement") to help detect, prevent,

---

[3] Plaintiffs also allege that Akparanta believed that Reid and Harris were "after him," indicating that they were making some effort to investigate his misbehavior. Compl. ¶ 106.

intervene in, investigate, and discipline instances of sexually abusive behavior. *See* Declaration of Brian Best dated June 11, 2021 ("Best Decl.") ¶ 5, Ex. A. In June 2012, the Department of Justice ("DOJ") promulgated 28 C.F.R. Part 115 to implement 34 U.S.C. § 30307(a)(1), a statutory provision that required the Attorney General to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape." Those regulations remain in effect and are binding on the BOP. *See id.* § 30307(b). The BOP has thrice replaced Program Statement 5324.06 with updated Program Statements: Program Statement 5324.09 on August 20, 2012 (the "2012 Statement"), *see* Best Decl., ¶ 6, Ex. B; Program Statement 5324.11 on January 6, 2014 (the "2014 Statement"), *see id.*, ¶ 7, Ex. C; and Program Statement 5324.12 on June 4, 2015 (the "2015 Statement"), *see id.*, ¶ 8, Ex. D.

These policies and regulations set guidelines for preventing, responding to, and investigating sexual abuse in BOP facilities. For example, the 2005 Statement required notification of the "Operations Lieutenant" upon receipt of a complaint of sexually abusive behavior. 2005 Statement ¶ 11(a)(1). But "[n]ot all allegations of sexually abusive behavior . . . require[d]" a full-scale response. *Id.* ¶ 11(b). Instead, "the Program Coordinator w[ould] determine" whether "there [was] not sufficient reason to proceed," considering factors such as whether the victim recanted, whether the alleged perpetrator had an alibi, or whether the inmates involved independently reported a non-coercive encounter. *Id.* If there was a sufficient basis to examine the allegations further, staff would "consult and determine the actions to be taken to prevent further sexually abusive behavior," psychological services would be rendered, physical examinations taken, and an investigation would be conducted, including notification of the Warden, Office of Internal Affairs, and Office of the Inspector General. *Id.* ¶¶ 11(b)(1), 12. Finally, "perpetrators of sexually abusive behavior w[ould] be disciplined and/or referred for prosecution." *Id.* ¶ 13.

DOJ's 2012 regulations, as interpreted by the 2012, 2014, and 2015 Statements, set the framework from 2012 through the present. The regulations provided for a similar notification structure to the 2005 Statement: the officer who receives an allegation is required to report it to the Operations Lieutenant, who is required to report it to the PREA Compliance Manager. *See, e.g.* 28 C.F.R. § 115.61(a); 2015 Statement at 37. In addition to reporting allegations, staff are permitted to "intervene as appropriate . . . in behaviors that may subsequently lead to an incident of sexual abuse." 2015 Statement at 37. The PREA Compliance Manager then "reviews relevant factors and makes a determination whether or not to proceed with full activation of the Response Protocol." *Id.* at 41; 28 C.F.R. § 115.65(a). The Response Protocol is implemented only "where there is a credible and serious allegation or instance of sexually abusive behavior." 2015 Statement at 41. Upon such allegation, the facility conducts a "prompt[], thorough[], and objective[]" investigation. 28 C.F.R. § 115.71. If the allegations are substantiated, the perpetrator is "subject to disciplinary sanctions up to and including termination," *id.* § 115.76(a), "commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories," *id.* § 115.76(c). "Substantiated allegations of conduct that appears to be criminal shall be referred for prosecution." *Id.* § 115.71(h).

The regulations and Program Statements also include guidance on how BOP staff should respond to circumstances indicative of sexual abuse absent a report of such abuse. For example, the 2005 Statement notes that staff should pay attention to inmate gossip, monitor isolated areas, and be alert to changes in inmate behavior "to better detect sexually abusive behavior, and possibly deter problems before they occur, or before the escalate." 2005 Statement ¶ 10 (emphasis omitted). The 2012 DOJ regulations state that staff must "report immediately and according to agency policy

any knowledge suspicion, or information regarding an incident of sexual abuse." 28 C.F.R. § 115.61(a); *see also* 2015 Statement at 37 ("In addition to reporting information, staff intervene as appropriate . . . in behaviors that may subsequently lead to an incident of sexual abuse."). Further, "[w]hen an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate." 28 C.F.R. § 115.62. The 2015 Statement explains that "all options for safeguarding the inmate should be considered" and that the appropriate response "will vary depending on the severity of the alleged sexually abusive behavior and could include monitoring the situation, changing housing assignments, changing work assignment[s]," or other solutions. 2015 Statement at 39.

Finally, DOJ's regulations lay out procedures for improving institutional design to prevent assaults from occurring in the first instance. For example, the regulations provide that an agency "shall ensure that each facility it operates shall develop, document, and make its best efforts to compile on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse." 28 C.F.R. § 115.13(a). That regulation continues: "In calculating adequate staffing levels and determining the need for video monitoring, facilities shall take into consideration" eleven factors, including, "[t]he prevalence of substantiated and unsubstantiated incidents of sexual abuse," "[t]he composition of the inmate population," and "[a]ny other relevant factors." *Id.* § 115.13(a)(1)-(11).

## III.   **Plaintiffs' Claims**

Plaintiffs' Complaint asserts two constitutional claims against each of the individual Moving Defendants pursuant to *Bivens*: Count I, for violation of the Eighth Amendment, Compl. ¶¶ 136-59, and Count II, for violation of the Fifth Amendment, *id.* ¶¶ 160-83. These claims are

premised on the shared theory that the individual Moving Defendants failed to protect Plaintiffs from sexual abuse at the hands of Akparanta.

Plaintiffs' Complaint also asserts three tort claims against the United States pursuant to the FTCA: Count III for negligence, Compl. ¶¶ 184-217, Count IV for negligent infliction of emotional distress, *id.* ¶¶ 218-52, and Count V for negligent hiring, retention, training, and supervision, *id.* ¶¶ 253-62. These claims also share a common theory: that the United States of America owed a duty to the Plaintiffs and breached that duty by failing to adequately prevent, investigate, and take corrective action against Akparanta's malicious behavior.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Achcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A complaint does not satisfy this standard "if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted); *see also Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (stating that a court need not give "credence to [a] plaintiff's conclusory allegations" (quotation marks omitted)).

Further, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *U.S. v. Sherwood*, 312 U.S. 584,

586 (1941).  "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government."  *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988).

## ARGUMENT

For the reasons discussed below, Plaintiffs' claims against the Moving Defendants should be dismissed. Plaintiffs lack a cause of action through which they can assert their constitutional claims against the individual Moving Defendants. Their FTCA claims against the United States are barred by the discretionary function exception or should be dismissed as duplicative.

## I.    Plaintiffs Lack a *Bivens* Remedy for Their Constitutional Claims

Counts I and II of Plaintiffs' Complaint assert Eighth and Fifth Amendment claims against the individual Moving Defendants pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), premised on the individual Moving Defendants' alleged failure to detect and prevent Akparanta's sexual abuses and failure to discipline Akparanta for his commission of these abuses. *See* Compl. ¶¶ 136-83. These claims must be dismissed because *Bivens* does not provide a right of action for Plaintiffs' claims.

A "*Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'"  *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc).  The Supreme Court recently reiterated that "expanding the *Bivens* remedy is now a disfavored judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted).  In keeping with the Supreme Court's historic reluctance to recognize a new *Bivens* remedy under any circumstance,[4] courts apply a two-part test to determine whether a constitutional *Bivens* remedy should be implied.

---

[4] The Supreme Court last recognized a new *Bivens* right of action in 1980.  *See Carlson v. Green*, 446 U.S. 14 (1980).  It has consistently declined to do so in the years since.  *See Abbasi*, 137 S. Ct. at 1857 (collecting cases); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("[F]or almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*.").

First, a court must consider whether a claim "presents a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1859. This step requires a court to ask whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* The Supreme Court has decided three such cases, involving:

- A Fourth Amendment claim against Federal Bureau of Narcotics agents alleging an unconstitutional search and arrest within a man's home. *Bivens*, 403 U.S. at 389;

- A Fifth Amendment equal protection claim against a Congressman who admitted to terminating an employee because she was a woman. *Davis v. Passman*, 442 U.S. 228, 230 (1979); and

- An Eighth Amendment claim brought by the estate of a deceased prisoner alleging his death was caused by prison officials' deliberate indifference to his asthma. *Carlson*, 446 U.S. at 16–17.

*Abbasi*, 137 S. Ct. at 1860. "[E]ven a modest extension" of one of these three scenarios "is still an extension" that presents a new context. *Id.* at 1864. "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous *Bivens* cases." *Id.*

If a case presents a new context, a court must next evaluate whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). If there are such special factors, a *Bivens* remedy will not be available. *Id.* This step requires a court to decline to extend a remedy "if there is an alternative remedial structure present in a certain case," or if the judiciary is not "well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. "The only relevant threshold—that a factor 'counsels hesitation'—is remarkably low." *Arar*, 585 F.3d at 574. "Hesitation is a pause, not a full stop, or

an abstention; and to counsel is not to require." *Id.* "It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction." *Id.*

This framework forecloses Plaintiffs' *Bivens* claims, which are both species of deliberate indifference to inmate safety claims, *see, e.g.*, *Farmer v. Brennan*, 511 U.S. 825 (1994),[5] and will be addressed in tandem, as such.[6]

### A. Plaintiffs' Claims Present a New Context

Whether deliberate indifference to inmate safety claims present a new context has been thoroughly litigated since the Supreme Court's decision in *Ziglar v. Abbasi*, with the weight of authority finding that they do. *Compare, e.g.*, *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 440 (D.N.J. 2018) ("Eighth Amendment sexual assault, failure to protect, failure to intervene, and failure to investigate claims . . . are new *Bivens* contexts."); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018) (same, regarding conditions of confinement claims); *Oden v. True*, No. 18 Civ. 600 (GCS), 2020 WL 4049922, at *5 (S.D. Ill. July 20, 2020) (same); *White v. Hess*,

---

[5] The Fifth Amendment applies to pre-trial detainees, whereas the Eighth Amendment applies post-conviction, although the deliberate indifference standards are similar. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29-30, 32, 35 (2d Cir. 2017). The only difference is that the *mens rea* requirement under the Fifth Amendment is recklessness, while it is actual knowledge under the Eighth Amendment. *See Farmer*, 511 U.S. at 836-37; *Darnell*, 849 F.3d at 32, 35.

[6] Although Plaintiffs' claims sound in theories of supervisory liability, *see, e.g.* Compl. ¶ 171, and failure-to-intervene, *see, e.g.*, *id.* ¶ 168, the Second Circuit recently clarified that to hold an official liable for a constitutional violation, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability," which—in the case of a deliberate indifference claim— "requires a showing of deliberate indifference on the part of the . . . official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). In any event, the standards for implying a *Bivens* right of action would be *higher* if Plaintiffs chose to disavow a theory of direct liability in favor of one dependent on supervisory liability or failure to intervene. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[V]icarious liability is inapplicable to *Bivens* . . . suits."); *Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (declining to extend a *Bivens* remedy, in part because "plaintiff's theory of liability is based on [defendants'] alleged failure to intervene rather than the underlying excessive force violation").

No. 14 Civ. 03339 (CBA), 2020 WL 1536379, at *7 (E.D.N.Y. Mar. 31, 2020) (same), *Morgan v. Shivers*, No. 14 Civ. 7921 (GHW), 2018 WL 618451, at *5 (S.D.N.Y. Jan. 29, 2018) (same under Fifth Amendment, as plaintiff was a pre-trial detainee), *with Walker v. Schult*, 463 F. Supp. 3d 323, 330 (N.D.N.Y. 2020) (not a new context); *Burnam v. Smith*, 787 F. App'x 387, 390 (9th Cir. 2019) (same). Because claims of indifference to physical threats differ materially from the claims of deliberate indifference to medical needs presented in *Carlson*, this Court should conclude that Plaintiffs' claims present a new context.

Plaintiffs' claims—which implicate a broad range of issues regarding corrections officer supervision, retention, and discipline, *see, e.g.*, Compl. ¶ 125, as well as the institutional design of sexual abuse detection at MCC, such as through camera placement at the facility, *see, e.g., id.* ¶ 66—"involve a broader range of prison administration activity than failure to provide medical care claims," like the one presented in *Carlson*, a factor several courts have considered in determining that deliberate indifference to inmate safety claims present a new context. *Oden*, 2020 WL 4049922, at *4; *Morgan*, 2018 WL 618451, at *5; *see also Bell v. Wolfish*, 441 U.S. 520, 531 (1979) (Courts "are ill equipped to deal with the increasingly urgent problems of prison administration.") (internal quotation marks omitted). Further, in *Carlson*, "liability for *Bivens* damages attached to 'specific actions taken against an individual inmate,' whereas Plaintiff's failure-to-protect claim seeks to impose *Bivens* liability for inaction." *Chambers v. Herrera*, No. 17 Civ. 2564 (KES), 2019 WL 4391135, at *9 (C.D. Cal. July 9, 2019) (Report and Recommendation). And the *Abbasi* Court itself declined to imply a new *Bivens* remedy for reasons relevant to this case, noting that "[t]he standard for a claim alleging that a warden allowed guards to abuse pre-trial detainees is less clear under the Court's precedents," than the standard for claims like the one presented in *Carlson*. *Abbasi*, 137 S. Ct. at 1864-65; *see also Tangreti*, 983 F.3d at

620 (helping to clarify the standard for deliberate indifference claims). As a court in this district noted, "[t]he Supreme Court has recognized only three *Bivens* contexts, none of which include failure to protect." *Cannenier v. Skipper-Scott*, No. 18 Civ. 2383 (LGS), 2019 WL 764795, at *5 (S.D.N.Y. Feb. 20, 2019).[7] Even where the difference between a claim and one of the three recognized *Bivens* claims is "small," "the new-context inquiry is easily satisfied." *Abbasi*, 137 S. Ct. at 1865.

Courts concluding that claims like Plaintiffs' do not present a new context most often do so by reasoning that the Supreme Court impliedly recognized such claims in *Farmer v. Brennan*. *See Burnam*, 787 F. App'x at 390 ("The Supreme Court has extended monetary liability to a claim brought under the Eighth Amendment against prison officials who acted with deliberate indifference toward a substantial risk of an inmate suffering sexual abuse.") (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)); *Walker*, 463 F. Supp. 3d at 330 (in a case not alleging sexual abuse: "In *Farmer v. Brennan*, the Supreme Court specifically allowed a *Bivens* action to proceed against federal prison officials, upon the ground that they violated the Eighth Amendment by being deliberately indifferent to an inmate's safety.").

But as the *Oden v. True* court convincingly explains, these cases overread *Farmer*. *See* 2020 WL 4049922, at *4-*5. "[T]he only question before the *Farmer* Court was the proper standard for deliberate indifference, not whether to extend *Bivens* and recognize an implied cause of action for Eighth Amendment conditions of confinement claims." *Id.* at *4. Indeed, unlike in other *Bivens* cases, the *Farmer* Court did not analyze "whether to recognize a conditions of

---

[7] Plaintiffs' Fifth Amendment claims also involve a different constitutional amendment from the one at issue in *Carlson*. This alone is grounds to determine that Plaintiffs' Fifth Amendment claims present a new context. *See, e.g.*, *Abbasi*, 137 S. Ct. at 1864 ("[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right.").

confinement *Bivens* claim." *Id.* at \*5. *Farmer* is thus best understood as a case where the Supreme Court assumed without deciding that a *Bivens* remedy existed to address an issue of substantive constitutional law. This was characteristic of the Supreme Court's *Bivens* jurisprudence between *Carlson* and *Abbasi*. For example, in *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court "analyzed First Amendment issues in the context of a *Bivens* claim in much the same manner it analyzed the 'deliberate indifference' standard in *Farmer*." *Oden*, 2020 WL 4049922, at \*5. Nevertheless, six years later, the Supreme Court assured that it had "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Were there any doubt that *Farmer* did not impliedly recognize a new *Bivens* claim, that doubt would be dispelled by *Abbasi* itself. There, the Supreme Court noted that there were only "three *Bivens* claims the Court ha[d] approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860. Accordingly, *Farmer* provides little guidance on the "new context" question.

In short, this Court should conclude that Plaintiffs' claims present a "new context" and proceed with analyzing whether "special factors counsel hesitation."

B. *Special Factors Counsel Against Extending* Bivens

Because Plaintiffs' claims present a new context, this Court must consider whether special factors counsel against extending a *Bivens* remedy. The Second Circuit has described the threshold for declining to extend the remedy as "remarkably low." *Arar*, 585 F.3d at 574. Courts consider the existence of alternative remedial schemes, as well as the relative competence of the judiciary in weighing the costs and benefits of extending a damages remedy at this stage. *Abbasi*, 137 S. Ct. at 1857–58. Here, several factors counsel hesitation.

13

First, Plaintiffs' claims implicate a wide range of questions regarding prison administration: how and when to investigate claims of misconduct; how and when to supervise and discipline employees; and how to structure prisons in order to mitigate the risk of wrongdoing, to name a few. The Supreme Court has recognized that courts "are ill equipped to deal with the increasingly urgent problems of prison administration." *Bell*, 441 U.S. at 531 (internal quotation marks omitted); *see also id.* at 547 ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions."). And individual capacity constitutional suits are a poor vehicle through which to challenge alleged systemic failures of a federal facility to protect an inmate, as an individual federal employee will be only one among many entrusted with the inmates' protection. *See Chambers*, 2019 WL 4391135, at *9 ("Extending a *Bivens* remedy risks 'disruptive intrusion' by the courts into prison administration, because 'protecting' an inmate from a BOP staff member may require doing something that COs (or even higher BOP officials) often lack authority to do unilaterally, such as reassigning the staff member or changing an inmate's housing.").

Second, "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim." *Hunt*, 336 F. Supp. 3d at 1169. As the Supreme Court noted in *Abbasi*, "[s]ome 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995," but did "not provide for a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865. The Supreme Court acknowledged that this may "suggest[] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prison mistreatment." *Id.*

Moreover, in 2003, Congress enacted the PREA, which was enacted to, "among other things, 'protect the Eighth Amendment rights of Federal, State, and local prisoners,' 34 U.S.C.

§ 30302(7), in light of the Congressional finding that '[t]he high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution,' 34 U.S.C. § 30301(13)." *Morgan*, 2018 WL 618451, at *7.  "This statutory scheme has not, however, been interpreted to establish a private cause of action for allegations of prison rape." *Id.* As Judge Gregory Woods in this district concluded:

> This further suggests that, when Congress had the "specific occasion to consider the matter" of prison sexual assault, "and to consider the proper way to remedy those wrongs," it did not find the creation of a remedy for individuals appropriate. Congressional action in this area suggests that the Judiciary should hesitate before creating a remedy in this case.

*Id.* (citation omitted); *see also Dudley v. United States*, No. 19 Civ. 317, 2020 WL 532338, at *7 (N.D. Tex. Feb. 3, 2020) (similar).

Third, the BOP's Administrative Remedy Program provides an alternative process available to prisons like Plaintiff "to seek formal review of an issue relating to any aspect of [their] own confinement." 28 C.F.R. § 542.10(a). "Numerous courts post-*Abbasi* have recognized that the Administrative Remedy Program is an alternative process and a special factor that forecloses expansion of the *Bivens* remedy." *Dudley*, 2020 WL 532338, at *8 (collecting cases). Further, Plaintiffs have an alternative remedy in the form of state-law tort claims against Akparanta. *Rivera v. Samilo*, 370 F. Supp.3d 362, 370 (E.D.N.Y. 2019) ("Plaintiff had some avenues for redress under New York state law to the extent he claimed that [defendant's] actions placed him outside the scope of his federal employment.").

Any of these factors standing alone is enough to preclude extension of a *Bivens* remedy, given that, as the Second Circuit has warned: "The only relevant threshold—that a factor 'counsels hesitation'—is remarkably low." *Arar*, 585 F.3d at 574.

* * *

15

For the foregoing reasons, Plaintiffs lack a *Bivens* remedy for their individual capacity constitutional claims. As such, their claims against each of the individual Moving Defendants should be dismissed.

## II. Plaintiffs' FTCA Claims Challenge Discretionary Functions and Are Barred

Plaintiffs also assert three claims under the FTCA. These claims share the central premise that the United States owed Plaintiffs a duty of care but breached that duty by failing to adequately protect them from Akparanta, either by staffing and monitoring MCC in a manner that would prevent assaults from occurring, investigating Akparanta for his misconduct, or by appropriately supervising, training, and disciplining Akparanta to prevent future misconduct. *See* Compl. ¶¶ 184-217 (Count III), ¶¶ 218-52 (Count IV), [8] ¶¶ 253-62 (Count V). For the reasons that follow, this tort theory is not actionable under the discretionary function exception to the FTCA, which "suspends the FTCA from applying to '[a]ny claim . . . based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) (quoting 28 U.S.C. § 2680(a)).

The discretionary function exception applies to bar a plaintiff's tort suit where the conduct challenged "involve[s] an element of judgment or choice" in that it is "not compelled by statute or regulation" and where the "choice in question" is "grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000)

---

[8] Count IV, Plaintiffs' negligent infliction of emotional distress claim, simply repeats the allegations that form the basis for Plaintiffs' negligence claim, Count III. *Compare, e.g.*, Compl. ¶¶ 184-213, *with id.* ¶¶ 218-47. Count IV should accordingly be dismissed as duplicative because "[n]o negligent infliction of emotional distress or intentional infliction of emotional distress claim will lie where 'the conduct underlying the claim[s] falls within the ambit of traditional tort liability.'" *Ojo v. United States*, No. 15 Civ. 6089 (ARR), 2018 WL 3863441, at *6 (E.D.N.Y. Aug. 14, 2018) (quoting *Romero v. City of New York*, 839 F. Supp. 2d 588, 632 (E.D.N.Y. 2012)).

(quotation marks omitted). Government misconduct investigations, supervisory and disciplinary decisions, and decisions about the appropriate manner to supervise inmates all traditionally fall within the discretionary function exception's ambit. As explained below, the MCC's procedures for preventing and responding to sexual misconduct are discretionary and involve consideration of public policy. The only aspect of the regulations and policies governing the BOP's sexual assault protocol that is non-discretionary—the requirement to report suspicions of sexual misconduct to a supervisor—does not give rise to an independently actionable claim.

### A. The MCC's Sexual Assault Response and Prevention Is Not Compelled by Regulation

Plaintiffs' FTCA claims challenge the mechanisms the MCC has in place to prevent, investigate, and discipline sexual assaults. As discussed above, regulations and policy statements promulgated pursuant to the PREA govern the MCC's sexual assault prevention and response measures. However, these regulations and guidelines define MCC policies in a manner that leaves MCC officials with "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quotation marks omitted). Accordingly, the MCC's sexual assault prevention and response measures are not "compelled by . . . regulation." *Coulthurst*, 214 F.3d at 109.

Beginning with prevention, Plaintiffs argue that the MCC did not implement sufficient additional safeguards—installing additional video cameras or otherwise adequately monitoring off-camera areas within the MCC—in response to other sexual assaults at MCC and to Akparanta's suspicious behavior. Compl. ¶¶ 66, 96. Plaintiffs allege that this "was in direct violation of mandatory and non-discretionary BOP policies, which required that BOP staff eliminate any known blind spots and install sufficient video monitoring to protect inmates against sexual abuse." *Id.* ¶ 66. However, the pertinent regulation—28 C.F.R. § 115.13—is anything but non-discretionary. It requires the MCC to "make its best efforts to comply on a regular basis with a

staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring." *Id.* § 115.13(a). It then provides that "facilities shall take into consideration" eleven factors—"composition of the inmate population"; "number and placement of supervisory staff"; "accepted detention and correctional practices"; and "other relevant factors," to name a few—"[i]n calculating adequate staffing levels and determining the need for video monitoring." *Id.* Where regulations "do not lay out specific means" for accomplishing an objective, but instead leave implementation "up to the discretion" of an entity, the entity's actions are not compelled by regulation. *Matthias v. United States*, 475 F. Supp. 3d 125, 141 (E.D.N.Y. 2020).

Plaintiffs' allegations about individual MCC staff members' failure to detect and prevent sexual assaults, *see supra* at 2-3, implicate similarly discretionary regulations and policies. The BOP's 2015 Statement explains that staff should "actively pay[] attention" to "institution or unit climate" by monitoring "[i]nmate communications," "[c]omments to staff," "[i]nmate interactions," "[c]hanges in inmate behavior," and more. 2015 Statement at 37-38. DOJ regulations require BOP staff to report "any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility," 28 C.F.R. § 115.61(a), and the BOP's implementing guidance further provides that "staff intervene as appropriate . . . in behaviors that may subsequently lead to an incident of sexual abuse," 2015 Statement at 37. These provisions provide helpful guidance to BOP staff on what inmate and staff behaviors suggest a problem. But they leave it to staff members' discretion to "intervene as appropriate" if that behavior is recognized.

Where policies "allow room for implementing officials to make independent policy judgments, the discretionary function exception protects the acts taken by those officials in the exercise of this discretion." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 546 (1988).

Decisions about how to supervise inmates implicate such policy judgments. *See Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy."). This remains true even when policies prescribe factors to follow in the exercise of an official's discretion, as the BOP's policies do here. *See, e.g.*, *Smith v. U.S. Coast Guard*, 220 F. Supp. 2d 275, 281 (S.D.N.Y. 2002) (applying the discretionary function exception where regulatory standards were "highly detailed" but did not require ship inspectors "to take specific steps" and did "not specify the means by which the Coast Guard inspector [was] to determine compliance"). BOP policies regarding the detection of sexual misconduct do not "mandate[] a specific course of conduct" such that an "employee 'has no rightful option but to adhere to the directive.'" *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 386 (E.D.N.Y. 2009) (quoting *Gaubert*, 499 U.S. at 322).

DOJ and BOP policy regarding the investigation of allegations of sexual misconduct is also discretionary. After allegations are reported to the appropriate MCC official, 28 C.F.R. § 115.61(a), that official "reviews relevant factors and makes a determination whether or not to proceed with full activation of the Response Protocol." 2015 Statement at 41; *see also* 28 C.F.R. § 115.65. If the allegations are "credible and serious," 2015 Statement at 41, the MCC must conduct a "prompt[], thorough[], and objective[]" investigation. 28 C.F.R. § 115.71(a). It must also "take immediate action to protect the inmate." 28 C.F.R. § 115.62. That action "will vary depending on the severity of the alleged sexually abusive behavior and could include monitoring the situation, changing housing assignments, [or] changing work assignment[s]." 2015 Statement at 39. "[C]ourts have repeatedly concluded that investigative functions qualify as discretionary

functions to which § 2680(a) applies." *Salafia v. United States*, 578 F. Supp. 2d 435, 440 (D. Conn. 2008); *see also id.* at 441 ("Army Regulations 195–1 and 195–2 set out general policies for criminal investigations which necessarily require discretion on the part of the investigators, including when they gather information and make recommendations for appropriate action.").

Finally, the MCC retains discretion in disciplinary matters undertaken pursuant to the PREA regulations. If an allegation of misconduct is substantiated, the perpetrator is "subject to disciplinary sanctions up to and including termination." 28 C.F.R. § 115.76(a). The nature of the discipline is to be "commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories." *Id.* § 115.76(c). Further, "[s]ubstantiated allegations of conduct that appears to be criminal shall be referred for prosecution." *Id.* § 115.71(h). Again, these regulations require MCC officials to exercise judgment in determining appropriate discipline upon a substantiated claim of sexual abuse. They do not command a remedy. Indeed, "[p]ersonnel decisions of the United States generally fall within the discretionary function exception to the FTCA." *Li v. Aponte*, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) (collecting cases); *see also Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) ("[F]ederal courts have found that such hiring, training, and supervision decisions generally fall within the exception.").

In short, the MCC's process for preventing, detecting, investigating, and punishing sexual misconduct are subject to regulations and guidelines, but those regulations and guidelines imbue MCC officials with significant discretion. They cannot be said to command a particular result as to an individual's supervision, discipline, and termination.

B. *The MCC's Supervisory, Disciplinary, and Retention Policies Surrounding Sexual Abuse Are Susceptible to Policy Analysis.*

Decisions rendered in accordance with the discretionary regulatory framework discussed in the preceding section are susceptible to policy analysis and therefore fall within the discretionary function exception. *Coulthurst*, 214 F.3d at 109. "[I]t must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

The following oft-quoted passage from the D.C. Circuit explains why questions about training, supervision, discipline, and hiring matters are susceptible to policy analysis:

> The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition. Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment.

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (citations and quotation marks omitted). Similar factors animate the supervisory, disciplinary, and retention decisions challenged here. "[T]he key inquiry in deciding the applicability of the discretionary function exception is whether the challenged action involves the balancing of policy factors." *Leone v. United States*, 690 F. Supp. 1182, 1186 (E.D.N.Y. 1988).

Beyond those factors intrinsic in personnel decisions, the MCC's PREA policies explicitly required officials to balance policy factors. *See, e.g.*, 28 C.F.R. § 115.13(a) (eleven factors to balance in staffing and monitoring plan); 2015 Statement at 41 (PREA Manager "reviews relevant factors and makes a determination" whether to investigate); 28 C.F.R. § 115.76(c) (explaining

factors to consider in disciplinary actions). As the Eight Circuit has noted, this kind of factor-balancing is "inherently grounded in social, political, and economic policy." *Dykstra,* 140 F.3d at 796. And as the Supreme Court has noted, "the very existence of [a] regulation [providing an employee discretion] creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324.

Deference to personnel decisions is particularly appropriate in the context of prison management. "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell*, 441 U.S. at 547. "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* "Such considerations are peculiarly within the province and professional expertise of corrections officials, and . . . courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974).

### C. Any Claim for Failing to Report a Suspicion of Sexual Misconduct Lacks a Private Analogue.

The United States recognize that the MCC's requirement that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant," 2015 Statement at 37, imposes a non-discretionary duty on staff at the MCC. *See also* Compl. ¶ 109; 28 C.F.R. § 115.61(a) ("The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility."). However, this non-discretionary step in the MCC's procedures for preventing, detecting, investigating, and

disciplining sexual abuse does not bring Plaintiffs' claims outside the discretionary function exemption for two reasons.

First, a non-discretionary step in an investigatory scheme does not render the entire investigation non-discretionary. Thus, for example, in *Salafia v. United States*, Army regulations prescribed certain steps to be taken in an investigation, but the court held that the plaintiff's claim that the Army had conducted negligent investigations was barred by the discretionary function exemption because the plaintiff failed to identify "any provision in the regulations . . . which compelled a *particular outcome* to the investigations." 578 F. Supp. 2d at 441 (emphasis added). And in *Kelly v. United States*—much as here—the plaintiff sought damages based on an allegation that the Drug Enforcement Administration "fail[ed] to follow their own regulations relative to investigating allegations of misconduct by agents under their direction and control." 924 F.2d 355, 356 (1st Cir. 1991). The First Circuit affirmed dismissal of this claim under the discretionary function exemption in spite of regulatory language to the effect that allegations of misconduct "must be reported to [internal investigators] for investigative determination." *Id.* at 360 (quotation marks omitted).

Second, failure to abide by one regulation within the multifaceted investigatory process governing the detection and prevention of sexual assault at BOP facilities is more limited in scope than Plaintiffs' claim that the MCC failed to protect them from sexual abuse. Failure to abide by a specific PREA regulation is not in itself actionable because the PREA "has not . . . been interpreted to establish a private cause of action." *Morgan*, 2018 WL 618451, at *7. And the FTCA does not step in to provide a cause of action for this regulatory violation because, "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred." *Chen v. United States*, 854 F.2d

622, 626 (2d Cir. 1988) (quoting *C.P. Chem. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987)). Courts have consistently held that "no private analogue exists where a plaintiff's claims are 'grounded solely on the government's failure to follow applicable regulations.'" *Negron v. United States*, No. 19 Civ. 5442 (PMH), 2020 WL 5634304, at *5 (S.D.N.Y. Sept. 21, 2020) (quoting *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016)). Here, Plaintiffs have identified no New York-state law duty that would impose upon a private citizen a duty to report suspicions of their co-workers' sexual misconduct to their supervisors or face tort liability. Absent a private analogue, Plaintiffs cannot maintain an FTCA claim against the United States for failing to abide by a reporting requirement imposed by the BOP's guidance documents and regulations.

\* \* \*

In short, the MCC's actions in attempting to prevent, respond to, and discipline instances of sexual assault fall within the discretionary function exception to the FTCA. The weight of authority supports this conclusion. *See, e.g.*, *Dudley*, 2020 WL 532338, at *12 ("claims of negligent retention and negligent supervision must . . . be dismissed as barred by the discretionary function exception" because "the PREA standards recited by [the plaintiff] actually grant prison official broad discretion in investigating and disciplining actual or potential instances of sexual abuse"); *Tilga v. United States*, No. 14 Civ. 256 (JAP), 2014 WL 12783121, at *16 (D.N.M. Dec. 5, 2014) ("Although the PREA and its related regulations require the agency to take certain actions, the language of the statute and regulations allow an agency significant discretion in how best to prevent incidents of sexual abuse at a particular facility."); *but see Riascos-Hurtado v. United States*, No. 09 Civ. 0003 (RJD), 2015 WL 3603965, at *6-*7 (E.D.N.Y. June 5, 2015). Plaintiffs' FTCA claims should accordingly be dismissed.

24

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint against each of

the Moving Defendants in full.

Dated:   June 11, 2021
         New York, New York

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney for the
                              Southern District of New York

              By:     _/s/ Zachary Bannon_____
                              ALLISON ROVNER
                              ZACHARY BANNON
                              Assistant United States Attorneys
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.:  (212) 637-2691/2728
                              Fax:  (212) 637-2717
                              E-mail: Allison.Rovner@usdoj.gov
                                      Zachary.Bannon@usdoj.gov

25