## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KARILIE HERRERA, FRANCHESCA MORALES,
and CAROLYN RICHARDSON,

       Plaintiffs,

-against-

UNITED STATES OF AMERICA,
COLIN AKPARANTA, NORMAN REID,
LIEUTENANT WEST, STACEY HARRIS,
OFFICER COLLIER, TROY HILL,
OFFICER LEWIS, and JOHN AND JANE DOES 1-10,

       Defendants.

**Civil Action No.:**
**1:20-cv-10206 (PKC)**

### PLAINTIFFS' MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jaehyun Oh
THE JACOB D. FUCHSBERG LAW FIRM, LLP
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: (212) 869-3500
Fax: (212) 398-1532
E-mail: j.oh@fuchsberg.com

*Counsel for Plaintiffs*
*Karilie Herrera, Franchesca Morales, and Carolyn Richardson*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ iii

**PRELIMINARY STATEMENT** ................................................................... 1

**FACTUAL BACKGROUND** ........................................................................ 5

**LEGAL STANDARD** .................................................................................. 9

**ARGUMENT** ............................................................................................ 10

   **I.**   *Bivens* **provides Plaintiffs with a valid remedy for their Constitutional claims.**........ 10

      A.   *Plaintiffs' claims do not present a new context in* Bivens *jurisprudence.* ..................... 11

      B.   *There are no special factors counselling hesitation against allowing Plaintiffs'* Bivens *claims to proceed.* ................................................................................. 15

   **II.**   **Plaintiffs' FTCA claims are not barred by the discretionary function exception.**.. 18

      A.   *Defendants' acts were not discretionary as they refused to follow specifically prescribed course of action compelled by regulations.* ....................................... 19

      B.   *Defendants' acts, even if discretionary, were not grounded in considerations of public policy.* ...................................................................................... 22

**CONCLUSION** .......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Adorno v. Correctional Serv. Corp.*, 312 F.Supp.2d 505 (S.D.N.Y. 2004) ................................ 24

*Agostini v. Felton*, 521 U.S. 203 (1997) ...................................................................... 13

*Allaire Corp. v. Okumus*, 433 F.3d 248 (2d Cir. 2006) ......................................................... 9

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) ...................................................... 11, 12, 16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 9

*Berkovitz v. United States*, 486 U.S. 531 (1988) .................................................. 19, 20, 22, 24

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) ................................................................. 14, 15

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ................................................................................................................. passim

*Burks v. Lasker*, 441 U.S. 471 (1979) ............................................................................ 9

*Burnam v. Smith*, 787 F. App'x 387 (9th Cir. 2019) ............................................................ 15

*Carlson v. Green*, 446 U.S. 14 (1980) ..................................................................... passim

*Chin v. Bowen*, 833 F.2d 21 (2d Cir. 1987) ..................................................................... 16

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) ........................................ 11, 14, 15

*Coulthurst v. U.S.*, 214 F.3d 106 (2d Cir. 2000) ........................................................... passim

*Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015) ........................................................... 4, 16

*Darnell v. Pineiro*, 101 F.3d 845 (2d Cir. 2017) ............................................................... 10

*Davis v. Passman*, 442 U.S. 228 (1979) .................................................................. 11, 12, 13

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................................................. passim

*Fountain v. Karim*, 838 F.3d 129 (2d Cir. 2016) ............................................................... 10

*Loumiet v. U.S.*, 828 F.3d 935 (D.C. Cir. 2016) ............................................................... 18

*Marshall v. U.S.*, 2001 WL 34064770 (S.D.N.Y. Jul. 25, 2001) ................................................ 22

*Millbrook v. U.S.*, 569 U.S. 50 (2013) ......................................................................... 24

*Minneci v. Pollard*, 565 U.S. 118 (2012) .................................................................. 11, 15

*Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975) ..................................... 18

*Needham v. U.S.*, 1:17-cv-05944-ER (S.D.N.Y.) ................................................................. 7

*Noguera v. Hasty*, 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001) ................................................... 15

*Riascos-Hurtado v. U.S.*, 2015 WL 3603965 (E.D.N.Y. 2015) ..................................................... 23

*Santiago v. U.S.*, No. 1:20-cv-6887-SHS (S.D.N.Y.) .............................................................. 2

*Seminole Tribe v. Florida*, 517 U.S. 44 (1996). ................................................................ 13

*Shannon v. Venettozzi*, 670 F. App'x 29 (2d Cir. 2016) ..................................................... 4, 16

*Shapiro v. Cmty. First Servs., Inc.*, 2013 WL 1122628 (E.D.N.Y. Mar. 18, 2013) ................................ 9

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014) ............................ 10

*Tangretti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). .......................................................... 13

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) ................................ 10, 19, 22, 25

*U.S. v. Akparanta*, 1:19-cr-00363-LGS (S.D.N.Y.) ............................................................... 1

*U.S. v. Mullings*, 1:19-cr-00817-ERK (E.D.N.Y.) ................................................................ 6

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) .......................................................... 4, 14, 15

*Wilson v. Seiter*, 501 U.S. 294 (1991) ........................................................................ 14

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ................................................................. passim

**Statutes**

28 U.S.C. § 1346(b) ................................................................................................ 1
28 U.S.C. § 1346(b)(1) ........................................................................................... 18
28 U.S.C. § 2671 ...................................................................................................... 1
42 U.S.C. § 1983 .................................................................................................... 16
42 U.S.C. § 2000dd–1 ............................................................................................ 17
8 U.S.C. § 2679(b)(2)(A) ....................................................................................... 17

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................................... 1
Fed. R. Civ. P. 12(b)(1) ........................................................................................... 9
Fed. R. Civ. P. 12(b)(6) ........................................................................................... 9

**Regulations**

28 C.F.R. § 115.61(a) ............................................................................................ 21
28 C.F.R. § 542.10(c) ............................................................................................ 18
C.F.R. § 115.61 ..................................................................................................... 17

Plaintiffs Karilie Herrera, Franchesca Morales, and Carolyn Richardson brought this suit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*") and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, for Defendants' unconstitutional and otherwise unlawful conduct that caused Plaintiffs to suffer stalking, harassment, assault, and sexual abuse on numerous occasions in 2017 and 2018 under the custody of Federal Bureau of Prisons ("BOP") at the hands of Defendant Colin Akparanta, a former Correction Officer at Metropolitan Correctional Center - New York ("MCC"). Plaintiffs respectfully submit this Memorandum of Law in opposition to Government Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b).[1]

## PRELIMINARY STATEMENT

Over the course of his 18-year tenure as a correction officer at MCC since 2004, Akparanta exploited his position to sexually abuse at least 14 inmates who were under his care and custody—including Plaintiffs Ms. Herrera, Ms. Morales, and Ms. Richardson who suffered numerous acts of sexual violence in 2017 and 2018. Akparanta's horrific act only came to an end when Akparanta was suspended from BOP employment in or around December 2018.

Defendants do not contend that Akparanta's sexual predation on MCC inmates is a mere conjecture—nor can they. After his suspension from BOP employment, Akparanta was criminally indicted and pled guilty for having had sexual contacts with inmates to gratify his personal sexual desires. *See U.S. v. Akparanta*, 1:19-cr-00363-LGS (S.D.N.Y.). At the plea

---

[1] Plaintiffs properly named the United States as the sole defendant for the FTCA claims, and the following individual defendants for the Constitutional claims: Colin Akparanta himself, Akparanta's supervisors Norman Reid and Ronald West, and Akparanta's colleagues Stacey Harris, Shakiyl Collier, Troylinda Hill, and Nicole Lewis, each of whom knew and disregarded Akparanta's sex abuse. Akparanta has failed to appear in this action, either *pro se* or by counsel. As this Memorandum is being filed in opposition to the Motion to Dismiss by the remaining defendants, all of whom are represented by the United States Attorneys, this Memorandum will refer to these Defendants collectively as "Government Defendants," and excluding the United States, as "Individual Defendants."

hearing on March 4, 2020, Akparanta admitted that he had engaged in sexual acts with no fewer than seven female inmates, dating back to no later than 2012.

Notably, Plaintiffs in this lawsuit were each sexually abused by Akparanta in numerous occasions in 2017 and 2018—at least *five years* after the assault in 2012 that the Government acknowledged was provable beyond a reasonable doubt. In their 50-page Complaint, Plaintiffs allege in abundant and painful detail, that the sexual abuse they came to suffer could occur *only because* the Government Defendants, as Akparanta's superior or peer officers, condoned (if not encouraged) Akparanta's sexual misconduct by disregarding obvious warning signs and direct sex abuse allegations they received against Akparanta since at least 2012. Far from a one-off incident, Akparanta's predatory reign on Unit 2 (the only women's dormitory at MCC) could continue for many years *because of* the willful blindness and tacit approval of other BOP employees including the Individual Defendants.[2]

By moving to dismiss the Complaint despite these specific factual allegations, the Government Defendants in effect continue to turn a blind eye to Plaintiffs' catastrophic pain and suffering. Defendants claim that their Motion "does not question the reprehensible nature of Akparanta's conduct." Defs' Br. 1. Yet, they shirk their own liability and put the blame solely on Akparanta, as if he was one bad apple that managed to evade detection. Contrary to the undertone of Defendants' brief, Akparanta's horrific behavior does not somehow detract from the remaining Defendants' culpability as a matter of law—indeed, Government Defendants' recurrent failure to protect Plaintiffs from Akparanta's reprehensible act is precisely what makes

---

[2] In their moving papers in another case arising out of Akparanta's sexual abuse of three additional victims, *Santiago v. U.S.*, No. 1:20-cv-6887-SHS (S.D.N.Y.), Dkt. No. 53, Government Defendants (except for Defendant West who was not a named defendant in that lawsuit) affirmed that they all continued to work at MCC until at least 2017 and/or 2018 when the Plaintiffs were abused by Akparanta. Upon information and belief, Defendant West also continued to work at MCC during this time. Plaintiffs assert that this fact, coupled with Defendants' awareness of Akparanta's sex abuse since at least 2012, shows Defendants' reckless disregard of a known threat of sexual violence posed to the Plaintiffs despite their ability and obligation to intervene.

them liable. Government Defendants' attempt to characterize themselves as "a sexual abuser's co-workers and supervisors" who simply failed "to detect and prevent the abuser's conduct" should be rejected, Defs' Br. 1, as this mischaracterization disregards the crux of Plaintiffs' claim, that these Defendants actually *knew*, and consciously disregarded, the obvious indications of Akparanta's recurrent sexual predation on MCC's female inmates including at least three discrete sex abuse allegations against Akparanta that inmates directly brought to them since 2012, *id.* ¶¶ 3-4, 7, 39-59, 120, 144, 168.

Government Defendants nonetheless insist that their condoning of Akparanta's recurrent sexual predation is not a compensable harm. That is plainly incorrect and is repugnant to Plaintiffs' right to seek relief for Defendants' deliberate indifference, reckless disregard, and negligence toward Plaintiffs' safety and welfare. First, Individual Defendants claim that *Bivens* does not provide remedy to the Plaintiffs. Notably, Defendants do not dispute that Plaintiffs' allegations against them state a plausible Constitutional claim. Rather, they simply assert that *Bivens* law does not provide remedy in this context as it is unprecedented.

Defendants are mistaken in characterizing this case as expanding *Bivens* remedy to a new context. In making this assertion, Defendants disregard out of necessity longstanding Supreme Court precedents that establish jail officials' violation of inmates' rights to be free from cruel and unusual punishment as a Constitutional wrong meriting *Bivens* damages. *See Farmer v. Brennan*, 511 U.S. 825, 830 (1994) (holding that there is a plausible *Bivens* claim when prison staff inflicts cruel and unusual punishment on inmates by deliberate indifference to known threats of sexual violence); *see also Carlson v. Green*, 446 U.S. 14, 21 (1980) (same in the context of deliberate indifference to serious medical needs). Even if this case presents a novel *Bivens* context, which it does not, Defendants still fail the next step of the *Bivens* inquiry recently upheld by the Supreme

Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), where they must show "special factors counselling hesitation" in upholding *Bivens* remedy. Far from being a case where the Congress would counsel against *Bivens* remedy, this case is a prototypical Eighth Amendment claim, with the Congress's firm stance against prison rape apparent from the Prison Rape Elimination Act of 2003 ("PREA"). There is no reason to believe that this is a case where the Congress would counsel deference to the legislature when Courts have routinely awarded damages in cases where supervisory or colleague officers violated the Constitution by failing to protect inmates from sexual violence—with no action from the Congress to overrule these decisions. *See Farmer*, 511 U.S. at 830; *Walker v. Schult*, 717 F.3d 119, 123 (2d Cir. 2013); *see also Shannon v. Venettozzi*, 670 F. App'x 29, 31 (2d Cir. 2016); *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). Moreover, as Defendants appear to acknowledge, Defs' Br. 2, Plaintiffs have no alternative mechanism to seek compensation for Defendants' undisputedly unconstitutional conduct. Under relevant judicial precedents and in the interest of justice, Plaintiffs' *Bivens* claim should proceed.

Second, Government Defendants cannot evade FTCA liability when they were, at a minimum, negligent in allowing Akparata's predatory behavior to continue for years. Plaintiffs' allegations are not limited to the fact that the United States hired Akparanta, a predator in uniform, in 2004 and did not fire him until at least 2018; Plaintiffs allege that the Government Defendants *knew* about Akparanta's misconduct and refused to follow *mandatory protocols* including that all knowledge or even suspicion of sexual abuse shall be promptly reported and investigated. Compl. ¶¶ 50-51, 66, 109. Defendants acknowledge the existence of these protocols, *see* Defs' Br. 10-13, 22-23, and yet seek to excuse their liability. This argument fails, not only as a matter of common sense but also based on Second Circuit precedents such as *Coulthurst v. U.S.*, 214 F.3d 106, 111 (2d Cir. 2000).

For these reasons and those that follow, the Court should deny Government Defendants'
Rule 12(b) Motion to Dismiss in its entirety.

## FACTUAL BACKGROUND

For no less than 14 years beginning in 2004, Akparanta sexually abused at least 14
inmates at MCC. Compl. ¶ 1. Akparanta's direct supervisors, namely Defendants Reid and West,
and Akparanta's colleagues, namely Defendants Harris, Collier, Hill, and Lewis knew that
Akparanta was sexually abusing inmates, *id.* ¶¶ 88, 101, 120-129, 151, 175, both because they
had received multiple direct reports of Akparanta's abuse, *id.* ¶¶ 3-5, 7, 49-59, 100, 105-108,
117, 120, 144, 168, and because as part of his *modus operandi*, Akparanta necessarily committed
flagrant violations of MCC's operating protocols, *id.* ¶¶ 3, 39-48, 88, 96, 99, 109-111, 117-129.
Akparanta's conduct was obvious to his supervisors and co-workers during their work together at
Unit 2, a small women's dormitory that consisted of approximately 35 inmates. *Id.* ¶ 128. Yet,
Government Defendants did nothing to stop Akparanta and in fact enabled him to roam Unit 2 at
his desire as the only correction officer assigned to that unit. *Id.* ¶¶ 75, 93. Simply put, it was
"only through the deliberate indifference, recklessness, carelessness, gross negligence, and
negligence of other BOP personnel, as well as abject systemic failures at MCC, that Defendant
Akparanta's abuses could continue for over a decade." *Id.* ¶ 6.

From 2004 to 2018, Akparanta sexually abused at least 14 inmates relying upon the
identical *modus operandi* as when he abused the Plaintiffs, indicating the ease with which the
Government Defendants could catch and deter Akparanta's conduct. *Id.* ¶¶ 1, 39-48. Specifically,
Akparanta volunteered to work shifts in Unit 2 so that he would be entrusted with daily rounds
and "safety checks" on vulnerable inmates. *Id.* ¶ 7. Akparanta chose his victims, groomed them
by bringing them contrabands from outside, orchestrated unjustified "lockdowns" to spend time

with them, brought them to guard stations commonly known as the "Bubble" or cells that are not captured by MCC's security cameras, and frequently stayed with them there for lengthy periods of time. *Id.* ¶¶ 7, 39-48, 82, 90. Defendants condoned the numerous occasions in which Akparanta brought inmates to off-camera areas. *Id.* ¶¶ 7, 10, 41, 46, 82-83, 90, 105.

Defendants, as Akparanta's direct supervisors or co-workers at Unit 2, knew about all these signs of sexual misconduct and turned a blind eye to it for years. *Id.* ¶¶ 7-8, 39-48, 88, 101, 120-129, 151, 175. It requires no stretch of inference that Defendants' repeated refusal to take reasonable steps to remedy Akparanta's acts emboldened Akparanta to act with apparent impunity. *Id.* ¶¶ 8, 54, 147-148, 171. Notably, at least one other correction officer, Rudell Mullings, sexually assaulted MCC's female inmates in or around 2014 using the *same* method of taking victims to the Bubble and was convicted for this act in 2015. *Id.* ¶¶ 63-65; *see also U.S. v. Mullings*, 1:19-cr-00817-ERK (E.D.N.Y.). Given this institutional history, the Government Defendants were, and at a minimum should have been, aware that Akparanta was engaging in sexual misconduct. Compl. ¶¶ 88, 101, 120-129, 151, 175. Notably, even after Mullings was criminally convicted and civilly sued for his action, Government Defendants still failed to rectify the blind spots not captured by MCC's security cameras, allowing Akparanta to abuse inmates including Plaintiffs in the same manner. *Id.* ¶ 63; *see also* MCC PREA Audit Report dated May 18, 2018, *accessible at* https://www.bop.gov/locations/institutions/nym/NYM_prea.pdf referenced in Compl. ¶ 66, at 7-8, 23 (noting that "No substantial upgrades in technology has taken place since August 20, 2012" and that there continued to be "blind spots … identified on the living units").

Akparanta's behavior of taking female inmates to off-camera areas should have been particularly alarming in the context of a correctional facility where there should be constant

surveillance of the inmates. In fact, it was Defendant West's job as a Lieutenant to monitor the security cameras and to "follow[ ] up on any suspicious activities that he noticed on the cameras." *Id.* ¶ 46. Any officer monitoring the security cameras would have observed Akparanta's obviously suspicious conduct of taking women to off-camera areas, which also violated MCC's operating protocols. *Id.* ¶ 125. Yet, neither Defendant West nor any other Defendants took any action to stop or investigate Akparanta. *Id.* ¶¶ 7, 83, 96-97.

Similarly, Akparanta was bringing contrabands to his victims as an inducement to sex, and these contrabands were seen by Defendants Reid and Harris as Unit officers; some of the contraband items such as clothes and makeup were so obvious that other inmates were asking Plaintiffs how they got them. *Id.* ¶¶ 43, 90, 103. Even though staff's procurement of contrabands for inmates is a clear violation of the BOP policies, Government Defendants failed to ask inmates about the contrabands or to perform periodic inspections or "shakedowns" of the jail cells—violating yet another mandatory MCC operating protocol. *Id.* ¶¶ 103-104.[3]

As if Akparanta's recurrent rule violations were not a sufficient indication of his misconduct, the Individual Defendants received direct reports regarding Akparanta's misconduct. *Id.* ¶ 53. In 2012, a female inmate reported Akparanta's sexual advances to Defendant Hill. *Id.* ¶ 54. Defendant Hill ignored this report and did nothing. *Id.* ¶ 56. At various times in or prior to 2017, Defendant Collier and Defendant Lewis also received separate complaints from female inmates regarding Akparanta's abusive behavior. *Id.* ¶¶ 55, 100, 105-108. Defendants Collier and Lewis ignored these reports and did nothing. *Id.* ¶¶ 56-59.[4] It was

---

[3] Government Defendants cannot claim that they were unaware of the risks of a correction officer bringing contraband to inmates when two former MCC correction officers, Victor Casado and Dario Quirumbay were indicted in 2018 alone for taking bribes from inmates in exchange for smuggling contraband into MCC. It is clear that such act violates federal laws and prison protocol.

[4] Notably, Defendant Collier was alleged to have similarly disregarded reports of staff-on-inmate sexual abuse in a civil lawsuit, *Needham v. U.S.*, 1:17-cv-05944-ER (S.D.N.Y.), involving Rudell Mullings who sexually abused MCC inmates in 2014 and was convicted for this act in 2015. Compl. ¶ 62.

common knowledge among MCC inmates, at least as of 2015, that "nothing ever happened" to Akparanta despite prior sex abuse complaint against him. *Id.* ¶¶ 72-74.

Disturbingly, the Individual Defendants openly acknowledged their awareness of Akparanta's inmate sex abuse in various occasions. *Id.* ¶¶ 99-109. For example, in or prior to 2017, Defendant Collier responded to inmates' complaints about Akparanta's abuse by quipping that Akparanta will "eventually get caught." *Id.* ¶ 107. Defendant Collier then told inmates not to report Akparanta, showing his clear awareness of Akparanta's wrongdoing. *Id.* ¶ 108. Similarly, in or around 2017, in response to complaints regarding Akparanta, Defendant Lewis told Unit 2 inmates that she "don't want to hear nothing about my officers touching you," evincing her awareness of Akparanta's conduct and her refusal to take any corrective action. *Id.* ¶¶ 100-101. Finally, after Akparanta was arrested, Defendant Harris told an inmate that she "kn[e]w something was happening but could never catch him," showing her actual awareness of Akparanta's misconduct while it was occurring. *Id.* ¶ 117.[5]

In sum, Individual Defendants knew yet ignored that Akparanta posed an obvious risk of committing sexual assault. *Id.* ¶¶ 88, 101, 120-129, 151, 175. Furthermore, Government Defendants inexplicably allowed Akparanta to work shifts in the women's unit as the only officer on duty, with unfettered access to the women he was systematically abusing. *Id.* ¶¶ 7, 93, 128, 131. Defendants violated their mandatory obligation to report and respond to Akparanta's conduct and perpetuated a culture of secrecy where Akparanta's predation on inmates could continue for over a decade. *Id.* ¶¶ 54, 147, 171.[6] Emboldened by Government Defendants'

---

[5] Whether this comment by Defendant Harris signifies deliberate indifference or simple negligence is a matter for the factfinder to decide after discovery.

[6] Corroborating Government Defendants' dismissive attitude toward staff-on-inmate sex abuse is the fact that even after Akparanta's arrest, Plaintiffs did not receive proper counseling or psychological treatment they needed; furthermore, Ms. Herrera suffered retaliation by a correction officer who baselessly accused her of being a "liar" who "took that poor officer's job." *Id.* ¶¶ 118-119.

willful blindness, Akparanta sexually assaulted at least *nine* MCC inmates including the three

Plaintiffs between 2017 and 2018 *alone*. *Id.* ¶¶ 67, 121, 124.

On December 4, 2020, Plaintiffs filed the Complaint, asserting two *Bivens* claims against

each Individual Defendant: Count I, for violation of the Eighth Amendment, and Count II, for

violation of the Fifth Amendment to the extent that Plaintiffs were pre-trial detainees during part

of Defendants' unconstitutional conduct. Plaintiffs also assert three FTCA claims against the

United States: Count III, for negligence, Count IV, for negligent infliction of emotional distress

("NIED"), and Count V, for negligent hiring, retention, training, and supervision. Defendants

timely served their Motion to Dismiss, and Plaintiffs timely submit this opposition.

## LEGAL STANDARD

Defendants' Motion relies on Fed. R. Civ. P. 12(b)(1) and (6).[7] When deciding a Rule

12(b)(6) motion, the court must accept the factual allegations contained in the complaint as true

and draw all inferences in favor of the plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-

50 (2d Cir. 2006). A complaint will survive a 12(b)(6) motion if it contains sufficient factual

matter, when accepted as true, states a claim for relief that is "plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court should deny Defendants' 12(b)(6)

motion if Plaintiffs have alleged "enough fact[s] to raise a reasonable expectation that discovery

will reveal evidence" that substantiates their allegations. *Twombly*, 550 U.S. at 556.

When resolving a motion to dismiss under Rule 12(b)(1), the Court "must take all

uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in

---

[7] Defendants do not clarify which portion of their Motion is brought under Rule 12(b)(1) versus (b)(6). Challenge of the type that Defendants bring against the *Bivens* remedy should be considered under Rule 12(b)(6), whereas an assertion of discretionary function exception to the FTCA is ordinarily considered under Rule 12(b)(1). *See Burks v. Lasker*, 441 U.S. 471, 476 (1979) (holding that "the question whether a cause of action exists is not a question of jurisdiction."); *Shapiro v. Cmty. First Servs., Inc.*, 2013 WL 1122628, at *2–3 (E.D.N.Y. Mar. 18, 2013) (denying motion to dismiss that "mistakenly invoked Rule 12(b)(1) in urging the court to reject…[a] Bivens remedy").

favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). If, on a Rule 12(b)(1) motion, a "district court has jurisdiction to consider [a] theory of liability," then "dismissal pursuant to Rule 12(b)(1) [is] inappropriate." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

## ARGUMENT

For the reasons discussed below, Plaintiffs' *Bivens* claims and FTCA claims should survive Motion to Dismiss. Plaintiffs' *Bivens* claims do not present a new context. Moreover, Plaintiffs' FTCA claims are not barred by the discretionary function exception.

## I. *Bivens* provides Plaintiffs with a valid remedy for their Constitutional claims.

The Complaint sufficiently pleads Individual Defendants' deliberate indifference in that they refused to take reasonable measures to protect Plaintiffs from the known risk of sexual attacks and created an environment in which such attacks were likely to persist. Defendants do not dispute the factual sufficiency of Plaintiffs' Constitutional claims. [8] *See* Defs' Br. 8. Nevertheless, Defendants argue that Plaintiffs are not entitled to be compensated for their undisputedly unconstitutional acts because *Bivens* remedy is purportedly not available in this context. This argument should fail on the law and on principle.

This is not a case where Plaintiffs seek to engage in judicial law-making. Plaintiffs are asserting their rights, well established under judicial precedents, to claim compensation against

---

[8] To the extent that Plaintiffs suffered Akparanta's abuse during pre-trial detention, they were also protected by the Fifth Amendment's Due Process Clause, as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment. Pre-trial detainees' rights governed by the Fifth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Darnell v. Pineiro*, 101 F.3d 845, 856 (2d Cir. 2017). Specifically, *Darnell* held that for pre-trial detainees, the *mens rea* or subjective requirement of a Constitutional claim does not require actual knowledge of substantial risk. Although *Darnell* involved state pretrial detainees invoking the Due Process Clause of the Fourteenth Amendment, the Second Circuit specifically noted that the "analysis in this decision should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment." *Darnell*, 849 F.3d at 21 (citation omitted).

prison officials who were deliberately indifferent to their health and welfare. *See Farmer*, 511 U.S. at 830. Defendants omit that "the context of Eighth Amendment violation by prison officials" is in fact one of the three areas in which the Supreme Court *has* consistently upheld the *Bivens* remedy since 1980.[9] *See Carlson*, 446 U.S. at 21; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer[.]"); *Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (same). As Plaintiffs are not seeking to expand the *Bivens* remedy to a novel context, Defendants' generic recitation of *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc) and *Ziglar*, 137 S. Ct. at 1860 where the Courts expressed reluctance to recognize a new *Bivens* context is inapposite.

If and only if this case presents a new *Bivens* context, the Court should then evaluate whether there are "special factors counselling hesitation in the absence of affirmative action by Congress" before disallowing *Bivens* remedy. *Carlson*, 446 U.S. at 18. The Supreme Court has already held in *Carlson* that there are "no special factors counselling hesitation" in cases involving federal jail officials' infliction of cruel and inhumane treatment on inmates. 446 U.S. at 19. Plaintiffs' *Bivens* claims are fully consistent with the Supreme Court's *Bivens* jurisprudence, the role of the judiciary, and the Congress's expressed stance against prison rape.

A.    *Plaintiffs' claims do not present a new context in* Bivens *jurisprudence.*

This case does not seek to extend *Bivens* remedy to a novel context. In making this argument, Defendants request this Honorable Court to break from a longstanding tradition of

---

[9] As Defendants acknowledge, Defs' Br. 16, the three areas where the Supreme Court upheld *Bivens* remedies are: a Fourth Amendment claim alleging an unconstitutional search and arrest, *Bivens*, 403 U.S. at 389; a Fifth Amendment claim alleging termination based on sex discrimination, *Davis v. Passman*, 442 U.S. 228, 230 (1979); and most importantly an Eighth Amendment claim alleging prison officials' deliberate indifference to inmate's health, *Carlson*, 446 U.S. at 16-17.

federal courts' reviewing the constitutionality of federal jail employees' cruel and unusual treatment of inmates. In their generic invocation of *Ziglar* and *Arar*, Defendants overlook that these cases did not overrule *Farmer*, 511 U.S. at 830 or *Carlson*, 446 U.S. at 16, which upheld a *Bivens* claim regarding jail officials' deliberate indifference to inmate's safety. In fact, *Ziglar* and *Arar* both cited *Carlson* affirmatively as an example where *Bivens* claim *was* properly brought. *See Ziglar*, 137 S. Ct. at 1855; *Arar*, 585 F.3d at 571.

Chronological listing of the Supreme Court's *Bivens* decisions, from 1980 to the 2010's, makes it clear that Plaintiffs' claims do not present a new *Bivens* context. In 1980, the Supreme Court held in *Carlson* that a damages remedy is available under *Bivens*, despite the absence of any statute explicitly conferring such a right, to an inmate who had suffered personal injuries due to prison officials' failure to treat his asthma. 446 U.S. at 18. Defendants seek to draw a distinction between *Carlson* and the present case, under the theory that *Carlson* involved prison officials' deliberate indifference to serious medical needs. The *Carlson* Court, however, drew no such distinction and upheld the *Bivens* remedy because (1) defendant-officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate"; and (2) Congress intended FTCA and *Bivens* to be "parallel, complementary causes of action," as the threat of suit against the United States under FTCA was insufficient to deter *individual actors'* unconstitutional conduct. 446 U.S. at 19-21. Each of these reasons applies to the present case in full force and effect.

Fourteen years later, in 1994, the Supreme Court specifically considered in *Farmer* an inmate's right to be free from sexual assault while incarcerated and recognized it as a *Bivens* claim. Like in the present case, the plaintiff in *Farmer* alleged that prison officials had acted with

deliberate indifference to the known risk of sexual attack. 511 U.S. at 830.[10] Perhaps recognizing that *Farmer* is dispositive of this portion of their Motion, Defendants argue that *Farmer* should not be considered a part of *Bivens* jurisprudence as the Supreme Court in *Ziglar* did not specifically cite *Farmer*. However, the *Ziglar* Court repeatedly cited *Carlson*, 446 U.S. at 19, as a recognized *Bivens* case. It is reasonable to understand *Ziglar* Court to have found it unnecessary to cite *Farmer* as a case that established a new *Bivens* context because *Carlson*, which predates *Farmer* by 14 years, had already awarded a *Bivens* remedy to an inmate with an Eighth Amendment claim. *See Agostini v. Felton*, 521 U.S. 203, 273 (1997) (expressly rejecting the notion that "more recent cases have, by implication, overruled an earlier precedent").[11]

In addition, Defendants argue that *Farmer* did not turn on the specific question of whether a *Bivens* remedy is proper, but simply resolved the then-existing Circuit split on the meaning of deliberate indifference standard in stating an Eighth Amendment claim. However, when the Court issues an opinion, "it is not only the result but also those portions of the opinion necessary to that result by which [a court is] bound." *Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996). Thus, in permitting the plaintiff's *Biven*s claim to survive summary judgment, the *Farmer* Court necessarily held that such a claim was cognizable under *Bivens*—and it is certainly improper to reach the opposite conclusion as Defendants do. *See Farmer*, 511 U.S. at 832–33;

---

[10] Given the holding in *Farmer*, 511 U.S. at 830, Defendants' characterization of Plaintiffs' claims against the Government Defendants as relying exclusively upon theories of supervisory or vicarious liability or some other indirect theory of liability is incorrect. *See* Defs' Br. 10 fn. 6. Government Defendants are directly liable to Plaintiffs under the Eighth Amendment, based upon their knowledge of the risk of Akparanta's sexual abuse and conscious disregard of that risk for over a decade. Compl. ¶¶ 6, 141-152. *Tangretti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020) cited by Defendants is inapposite because in that case, on summary judgment, the pretrial record did not "permit" the inference that defendant had subjective awareness of the risk of sexual abuse.
[11] Defendants' quotation of *Ziglar* as stating that there were only three *Bivens* claims approved by the Supreme Court in the past, Defs' Br. 20, referring to *Bivens*, *Davis*, and *Carlson* but not *Farmer* is misleading. *Ziglar* Court actually described *Bivens*, *Davis*, and *Carlson* as "*represent[ing]* the only *instances*" in which the Court has approved of *Bivens* remedy, *Ziglar*, 137 S. Ct. at 1855 (emphasis added), not as the only "cases." This is consistent with our interpretation that the Court deemed *Farmer* as already belonging to one of those instances under *Carlson*.

*see also Walker*, 717 F.3d at 123 (Second Circuit vacating the district court's dismissal of a *Bivens* action against the Warden and a Counselor who exposed a federal inmate to a substantial risk of serious harm—and citing *Farmer* in doing so); *Bistrian v. Levi*, 912 F.3d 79, 90–91 (3d Cir. 2018).

Then in 2001, the Supreme Court ruled against a *Bivens* remedy where a plaintiff sued a private company operating a halfway house, alleging that the defendant made him take stairs to his fifth-floor room. *Malesko*, 534 U.S. at 68. Under Defendants' logic, the *Malesko* Court should have examined the distinction between failure to provide medical care in *Carlson*, 446 U.S. at 18, and failure to provide an elevator in *Malesko*, 534 U.S. at 516—and should have rejected *Bivens* liability on that ground. However, the Court did not engage in such granular analysis that Defendants are asking this Court to conduct.[12, 13] Instead, the *Malesko* Court ruled on the ground that the plaintiff's claim was against a *private agency*, not an individual officer as in the present case. *Malesko*, 534 U.S. at 69-70 (citations omitted).

*Malesko* Court had no hesitation in affirming *Bivens* as an essential tool in deterring the unconstitutional acts of individual officers. *Id.* at 70. In fact, the reason that *Malesko* Court declined to extend *Bivens* remedies to suits against private corporations was that making a corporate defendant available for suit would *decrease* the likelihood that plaintiffs would bring

---

[12] To the extent that Defendants suggest that there should be a substantive distinction between non-medical and medical claim under the Eighth Amendment, the Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) expressly rejected any such dichotomy.

[13] Defendants suggest that the Constitutional right invoked in this case is different from that in *Carlson* in that *Carlson* was predicated on the Eighth Amendment whereas this case invokes the Eighth *and* the Fifth Amendments. *See* Defs' Br. 12 fn. 7, citing *Ziglar*, 137 S. Ct. at 1864. However, the Constitutional Amendment at issue is only one of the many factors considered by *Ziglar* and other Supreme Court decisions on *Bivens* claims. Moreover, Plaintiffs here invoke the Fifth Amendment to cover any violations that occurred while they were pre-trial detainees, but there is substantively no difference in Defendants' alleged conduct—in fact, except for Ms. Herrera who was a pre-trial detainee at the outset of the abuse, Compl. ¶ 79, the Complaint does not allege that the other Plaintiffs were pre-trial detainees at any relevant times. *See Bistrian*, 912 F.3d at 90 ("[A]n inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context.").

*Bivens* suits against individual officers. *Id.* at 71. Moreover, the Court pointed out that "federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities," including that the private corporations may be sued under State laws. *Id.* at 72-73. This existence of an alternative State tort remedy, conspicuously absent in the present case, was a key factor in the Court's analysis. *Malesko*, 534 U.S. at 74. Supreme Court's 2012 decision, *Minneci*, 565 U.S. at 126, similarly confirms that violation of the Eighth Amendment by a federal employee gives rise to a *Bivens* claim against him. In the present case, the Individual Defendants are undisputedly federal employees against whom *no* state tort law remedy exists for their uncontested Constitutional violations.

Against this backdrop, Government Defendants' assertion that the Supreme Court has declined to extend *Bivens* remedy for 40 years since *Carlson* is oversimplistic and misleading. *See* Defs' Br. 8 fn. 4. *Bivens* jurisprudence as outlined above shows that the Supreme Court cares deeply about whether plaintiffs have a proper channel to bring damages actions "necessary to redress past harm and deter future violations." *Ziglar*, 137 S. Ct. at 1858. This case falls squarely within the *Bivens* jurisprudence created by *Carlson* and re-affirmed repeatedly since. *See Bistrian*, 912 F.3d at 93; *Walker*, 717 F.3d at 123; *Noguera v. Hasty*, 2001 WL 243535, at *2 (S.D.N.Y. Mar. 12, 2001) (denying summary judgment on *Bivens* claims against supervisors at MCC-New York, the same jail as in the present case, when those supervisors had received a report that a correction officer raping inmates and yet gave him "continued access to the female unit"). As Plaintiffs' claims do not present a new *Bivens* context, this should end the inquiry.

      B.     *There are no special factors counselling hesitation against allowing Plaintiffs'* Bivens *claims to proceed.*

Even if Plaintiffs' *Bivens* claims were to present a new context, this Court should then engage in a special-factor analysis under *Ziglar*. 137 S. Ct. at 1857. The two elements that the

Court considers as special factors—namely the existence of alternative remedial schemes and the lack of competence of the Judiciary in evaluating a damages remedy—make it exceedingly clear that Plaintiffs' *Bivens* claims do not present special factors that counsel hesitation against extending *Bivens* remedy. In fact, the Second Circuit's established Eighth Amendment jurisprudence involving prison officials' disregard of another officer's sexual violence in an analogous 42 U.S.C. § 1983 context shows that this is a claim well-suited to Article III adjudication. *See Crawford*, 796 F.3d at 260; *Shannon*, 670 F. App'x at 31. Yet, because this act occurred in a federal jail and not a state or city facility where Section 1983 would apply, Defendants in effect seek to deprive Plaintiffs of any compensatory damages for Individual Defendants' unconstitutional conduct.[14]

Defendants identify three purported special factors in this case. First, they claim that this case implicates a "wide range" of policy questions regarding policy administration. Defs' Br. 14. However, this case is not like *Ziglar*, where a "hundreds of … illegal aliens" sought to challenge general conditions of their detainment, which was "pursuant to a high-level executive policy created in the wake of [September 11]," 137 S. Ct. at 1860, 1862-63; or *Arar* where plaintiffs sought to challenge "policies promulgated and pursued by the executive branch, not simply isolated actions of individual federal employees," 585 F.3d at 578. Indeed, Plaintiffs' *Bivens* claims fall on the opposite end of the spectrum, where Plaintiffs *are* challenging specific actions of specific federal employees—Reid, West, Harris, Collier, Hill, and Lewis—for each of their specific knowledge of Akparanta's predation and refusal to do anything regarding it. Compl. ¶¶ 3-5, 100, 105, 117. Relatedly, this Court should reject Defendants' argument that Plaintiffs'

---

[14] It is questionable whether there should be such divergence between Section 1983 liability and *Bivens* liability. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) ("*Bivens* actions are not significantly dissimilar to claims brought under [Section] 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted."

*Bivens* claim seek judicial "intrusion … into prison administration" policies. Defs' Br. 21. Defendants ignore that plaintiffs in *Arar* and *Ziglar* sought to challenge general conditions faced by foreign detainees, *pursuant to* and *because of* the executive policies at the time. This case is the opposite, where the Government Defendants violated the PREA mandates, federal regulations such as C.F.R. § 115.61, and BOP's internal protocols. Compl. ¶¶ 51, 66, 99, 109. Hence, there is no risk that the Court's award of *Bivens* remedy to Plaintiffs would cause BOP officials to second-guess their legitimate policy decisions; to the contrary, it would motivate BOP officials who are *violating* legitimate policies to comply with them.

Second, Defendants seek to infer Congressional doubt of *Bivens* remedy in this case from Congress's *lack* of action—specifically in that the Congress did not explicitly provide for a standalone damages remedy when passing the Prison Litigation Reform Act of 1995 ("PLRA") or PREA. However, unless Defendants are claiming that the Congress is unaware of the Supreme Court's *Bivens* jurisprudence, Congressional silence in fact conveys the opposite message. If Congress sought to overrule or extinguish *Bivens* remedy, it could have done so, and yet it did not.[15] Indeed, Congress has explicitly assumed the existence of a *Bivens* remedy in certain contexts. *See* 42 U.S.C. § 2000dd–1; 8 U.S.C. § 2679(b)(2)(A) (recognizing the complementary existence of *Bivens* actions).

Third, Government Defendants claim that the BOP's Administrative Remedy Program ("ARP") is a plausible alternative to *Bivens*. However, they do not dispute that ARP does not

---

[15] Defendants cite dicta in *Ziglar*, 137 S. Ct. at 1865, where the Court indicated that Congressional silence in PLRA may suggest that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." This dictum does not counsel against *Bivens* remedy in the present case because (1) this case *does* involve the same type of prisoner mistreatment as in *Carlson*, to be distinguished from confinement conditions of foreign detainees under post-9/11 Executive policy that was at issue in *Ziglar*; and (2) the *Ziglar* Court in fact vacated and remanded the case so that the lower Court may perform the special-factor analysis with regard to the detainee abuse claim against the Warden of the detention center, showing that the Court did not rule as a matter of law that Congressional silence is a sufficient special factor.

provide monetary damages. *See* 28 C.F.R. § 542.10(c). The relevant consideration should be whether the purported alternative provides *the type of remedy* sought by the Plaintiffs, not simply whether such alternative is theoretically available to people in Plaintiffs' situation. *See Carlson*, 446 U.S. at 18-19 (in finding "no special factors" counselling against *Bivens* despite the existence of FTCA, asking whether "Congress has provided an alternative remedy which it *explicitly declared to be a substitute for recovery* directly under the Constitution and viewed as *equally effective*) (emphasis added). With a potential exception of State law claims that may pertain to Akparanta only, Defs' Br. 22, Defendants here do not and cannot dispute that absent *Bivens*, Plaintiffs will be left without any damages remedy (let alone with an "equally effective" remedy) for Individual Defendants' own unconstitutional acts.[16]

## II.     Plaintiffs' FTCA claims are not barred by the discretionary function exception.

Defendants argue that Plaintiffs' FTCA claims are barred by the discretionary function exception.[17] Under FTCA, the United States waives its sovereign immunity in actions for money damages for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The discretionary function exception ("DFE") suspends this broad waiver of sovereign immunity from applying to a government employee's discretionary judgment with legitimate policy purpose. Government Defendants' characterization of their recurrent failures to

---

[16] Of note, in *Ziglar*, 137 S. Ct. at 1862-63, the Court noted that alternative mechanisms such as injunctive relief or a writ of *habeas corpus* were available *because* the plaintiffs were seeking class-wide change of the existing Executive policies—not individual damages award as in this case.

[17] Government Defendants' argument is counterintuitive, considering that Defendants (rightfully) do not dispute that they violated Plaintiffs' clearly established Constitutional right; as discussed in Part I, their objection against Plaintiffs' *Bivens* claims is only that there is purportedly no analogous *Bivens* case. This raises a theoretical question of whether an unconstitutional conduct can ever be considered a legitimate exercise of discretionary function. *See Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975) ("[A] federal official cannot have discretion to behave unconstitutionally."); *accord Loumiet v. U.S.*, 828 F.3d 935 (D.C. Cir. 2016) (collecting cases from seven circuits holding the same). For the sake of argument, this brief will analyze the FTCA caselaw under the assumption that Defendants' argument can pass this initial hurdle.

stop Akparanta's sex abuse as a discretionary judgment borders on absurdity, especially given the BOP's proclamation of "zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment" in federal jails. Dkt. No. 42-4 at 1.

As Defendants agree, Defs' Br. 16, the DFE "bars suit *only if* two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation *and* (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst*, 214 F.3d at 109 (emphasis added). Defendants fail both prongs.

First, Plaintiffs allege with specificity that Defendants refused to follow their mandatory reporting and response obligations under the Federal Regulations and BOP's protocols. *Id.* ¶¶ 50, 51, 66, 109. Plaintiffs' claim that the Government Defendants repeatedly allowed them to be sexually abused despite their actual knowledge of Akparanta's sexual misconduct is not barred by the DFE, since these Defendants simply did not have discretion to allow such abuse. *See Berkovitz v. United States*, 486 U.S. 531-32 (1988). Second, there should be no question that allowing rapes of inmates "serves no legitimate penological objectiv[e.]" *Farmer*, 511 U.S. at 833. Defendants' acts did not involve permissible exercise of discretion "of the kind that the discretionary function exception as designed to shield." *Berkovitz*, 486 U.S. at 536. Government Defendants cannot evade FTCA liability when they were (at a minimum) lazy and inattentive in allowing Akparanta's predation to continue for years. *See Triestman*, 470 F.3d at 474–75; *Coulthurst*, 214 F.3d at 111. Therefore, Defendants' Motion should be denied.

A.    *Defendants' acts were not discretionary as they refused to follow specifically prescribed course of action compelled by regulations.*

Defendants' violation of mandatory regulations takes Defendants' conduct outside of the scope of discretionary function shielded from FTCA liability. *See Berkovitz*, 486 U.S. at 536

("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow [because then] the employee has no rightful option but to adhere to the directive.").

Yet, Government Defendants impermissibly alter the governing test and claim that because *some* aspects of BOP's sexual assault protocols involve some elements of judgment or choice, for example in "calculating adequate staffing levels and determining the need for video monitoring," Defs' Br. 18, Plaintiffs' FTCA claims should fail in whole.[18] This argument disregards the Supreme Court's analysis in *Berkovitz*, involving the Government's licensing and public release of an oral polio vaccine. 486 U.S. at 533. The Supreme Court reversed the Third Circuit's finding that "federal law imposed no duties on federal agencies with respect to the licensing of polio virus vaccines or the approval of the distribution of particular vaccine lots to the public." *Id.* at 534. Supreme Court noted that while the licensing or distribution itself may be discretionary, "the relevant statutes and regulations obligated [Government] to require the submission of test data relating to a vaccine … and to deny a license when the test data showed that the vaccine failed to conform with applicable safety standards." *Id.* As the Government had failed to act in accordance with those directives, DFE could not apply on a motion to dismiss.

The same rationale undoubtedly applies to the present case. There is no question that Defendants violated at least some binding BOP directives. Despite some variations over the years, BOP policies since 2005 have *always* required the following: "*All* staff *must* report information concerning incidents *or possible incidents* of sexual abuse or sexual harassment" and do so "immediately"; and even in cases where "more information is needed" to evaluate the credibility of the allegations, "the full Response Protocol *must* be implemented," which includes

---

[18] There is a factual issue of whether the gross inadequacy either in staffing or video surveillance that allowed Akparanta to prey on MCC inmates for years can be considered a discretionary judgment.

mandatory notifications of the Warden, the Regional Director, the Office of Internal Affairs ("OIA"), and the Office of the Inspector General ("OIG"), and optional notification of the Federal Bureau of Investigations ("FBI") (emphasis added). 2005 Statement, *i.e.*, Dkt. No. 42-1 at 9-13; 2012 Statement, *i.e.*, Dkt. No. 42-2 at 21-22, 25; 2014 Statement, *i.e.*, Dkt. No. 42-3 at 38-40, 42, 44-45; 2015 Statement, *i.e.*, Dkt. No. 42-4 at 37-38, 41, 43-44; *see also* 28 C.F.R. § 115.61(a). The 2015 Statement that remains in effect to date also requires "all staff to report immediately … *any* knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility." Dkt. No. 42-4 at 37 (emphasis added). Plaintiffs allege that Government Defendants have done *none* of this. Compl. ¶¶ 52, 109, 124-131.

This is not the type of policy that allows "room for implementing officials to make independent policy judgments." Defs' Br. 18. The protocols plainly require mandatory reporting and due regard for *every* allegation. Had Defendants complied with their reporting and response duties, they would have found proof of what they already knew or at a minimum suspected, that Akparanta was sexually abusing MCC inmates; as a matter of fact, a search of Akparanta's locker at MCC and his cell phone after his arrest revealed incriminating evidence that was substantial enough to prove his guilt beyond a reasonable doubt. Compl. ¶ 115.

Defendants concede, as they must, that the reporting requirements for all staff "to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility" is in fact "non-discretionary." Defs' Br. 22. As Plaintiffs' claim is at least in part based upon the Government agents' decision to ignore staff-on-inmate sex abuse in violation of binding regulations, *see* Compl. ¶¶ 197, 231, the DFE "imposes no bar," regardless of whether some other parts of the

regulation involve policy judgment. *Berkovitz*, 486 U.S. at 543.[19] Therefore, Plaintiffs' FTCA claims should not be dismissed. *See Marshall v. U.S.*, 2001 WL 34064770, at *1–*2 (S.D.N.Y. Jul. 25, 2001) (holding that the DFE did not apply where BOP policies stated that institutions and officers "shall" and "will" take certain steps as here).

> B.  *Defendants' acts, even if discretionary, were not grounded in considerations of public policy.*

Even if Defendants' recurrent condoning of Akparanta's sex abuse can somehow be regarded as a discretionary judgment not governed by the binding regulations, that judgment must be a result of plausible policy determinations for it to be afforded the DFE protection. *See Berkovitz*, 486 U.S. at 538. Defendants fail this second prong of the DFE analysis as well.

Certain acts, although discretionary, are not protected by the DFE if they involve "negligence unrelated to any plausible policy objective." *Coulthurst*, 214 F.3d at 111. For instance, while the DFE would apply to an injured inmate's claim that the government negligently *designed* the procedures regarding inspection of prison equipment, it would *not* apply to a claim that an official negligently carried out the inspection because of "laziness," "haste," or "inattentive[ness]." *Id.* at 107–10. Similarly, in *Triestman*, 470 F.3d at 475, the Second Circuit held that a claim based on jail officer's failure to diligently patrol the jail was not barred by the DFE, as plaintiffs' injuries "would have been prevented had the BOP adhered to its own regulations" and as officer's failure was "out of laziness or inattentiveness." Simply put, an

---

[19] Defendants rely upon the fact that PREA compliance manager of the facility may choose not to active the full response protocol, *see* Defs' Br. 5-6. However, that decision is contingent upon a thorough and prompt investigation having concluded that an allegation is unsubstantiated or unfounded. *See* Dkt. No. 42-4 at 41. Defendants shirk the fact that here, Government Defendants refused to even *trigger* the response protocol by reporting their or inmates' suspicion about Akparanta to their superiors, the Operations Lieutenant, or the PREA compliance manager. *See id.* at 37 ("*Once reported*, an evaluation by the Institution PREA Compliance Manager of whether a full response protocol is needed will be made") (emphasis added). That reporting is undisputedly mandatory. Similarly, even though PREA coordinator may have some discretion regarding the exact extent of punishment that a sex abuser receives, it is a mandatory BOP policy that "perpetrators of sexually abusive behavior *will* be disciplined." *Id.* at 2, 13. There is nothing discretionary about this language.

official's "lazy or careless failure to perform his or her discretionary duties" constitutes negligent conduct that "neither involve[s] an element of judgment or choice within the meaning of [DFE] nor are grounded in considerations of governmental policy." *Coulthurst*, 214 F.3d at 109–10. Under these Second Circuit precedents, Plaintiffs' FTCA claims are not subject to DFE.

Perhaps acknowledging the weakness of their position, Defendants focus on Plaintiffs' Fifth Cause of Action regarding the United States' negligent hiring, retention, training, and supervision of its employees. *See* Defs' Br. 21-22 ("[Q]uestions about training, supervision, discipline, and hiring matters are susceptible to policy analysis"; "Deference to personnel decisions is … appropriate"). Government Defendants' failure to explain the policy considerations justifying their negligence and negligent infliction of emotional distress should allow Plaintiffs' Third and Fourth Causes of Action to survive this Motion. Even as for the Fifth Cause of Action, when the Complaint is "broad enough to cover both the types of negligence that are covered by [DFE] and the types of negligence that fall outside [it]," the Court may not "assum[e] that the negligence alleged in the complaint involved only discretionary functions." *Coulthurst*, 214 F.3d at 110.

Indeed, in a recent case with nearly identical facts, the Eastern District rejected the United States' argument that the DFE barred plaintiffs' FTCA claims where a jail counselor "did nothing" in response to an inmate's report that a correctional officer had sexually assaulted her. *Riascos-Hurtado v. U.S.*, 2015 WL 3603965, at *6 (E.D.N.Y. 2015). Notably, considering the same argument raised by Government Defendants here that the "personnel decisions" of the United States generally fall within the DFE, Defs' Br. 20, the *Riascos-Hurtado* court held that plaintiffs' negligent supervision and retention claims under FTCA survived summary judgment, even though it dismissed negligent hiring and training claims, after a "lengthy period of

discovery" indicating that the latter acts were based on administrative discretion. 2015 WL 3603965, at *1. *See also Adorno v. Correctional Serv. Corp.*, 312 F.Supp.2d 505, 519-21 (S.D.N.Y. 2004). Plaintiffs' allegations that the United States knew or should have known about Akparata's propensity to rape inmates and yet employed him for 14 years should be sufficient to defeat Defendants' Motion at this early stage. Compl. ¶¶ 127, 196-197, 231, 253-262.

There can be, and should be, no doubt that Defendants' failure to report, respond to, investigate, discipline, and terminate a known sex abuser for years was based on laziness, carelessness, or inattentiveness at best—not some policy considerations.[20] Nevertheless, as the last resort, Defendants argue that their violation of prison rape regulations and protocols cannot be compensated under FTCA as there is no separate private cause of action that was created by those regulations and protocols. Defs' Br. 30-31. This is incorrect. Just as Defendants' deliberate indifference to known threats of sexual violence states a *Bivens* claim, their negligence in the same context states a negligence claim that would be a cognizable state law claim if the Defendants were a private actor. Defendants do not seriously dispute this—instead, they argue that there should be a *specific* state law duty that establishes liability against a private citizen who violates the non-discretionary reporting duty of co-workers' sexual misconduct, for there to be an FTCA analogue. Defendants' interpretation finds no support in Second Circuit and Supreme Court's FTCA precedents—namely, *Berkovitz* decision did not question whether there is a state law analogue establishing a private person's duty against licensing a polio vaccine without safety data, 486 U.S. at 533; *Coulthurst* did not question whether there is a state law against taking a smoke break rather than inspecting the machines in federal jail, 214 F.3d at 111;

---

[20] As Akparanta has not appeared in this action, and the United States Attorneys do not represent Akparanta, this brief does not address whether the United States can be sued under FTCA for Akparanta's conduct that occurred while he was still a federal employee. At least one Supreme Court case unanimously held that FTCA liability could cover a correction officer's sexual assault on a prisoner. *Millbrook v. U.S.*, 569 U.S. 50, 55 (2013).

and *Triestman* did not question whether there is a state law against failure to patrol a federal jail, 470 F.3d at 475.

## CONCLUSION

Plaintiffs allege – and are confident the evidence will corroborate – that over a period of two years, they endured horrific and recurrent sexual assault, abuse, and harassment by Akparanta because Government Defendants knowingly condoned Akparanta's action. Compl. ¶¶ 7, 12, 75, 93. Defendants accept these allegations as true, as they must, and yet claim that Plaintiffs are not entitled to any monetary compensation. Defendants' arguments are unavailing on every front. As Justice Harlan observed in *Bivens*, "at the very least such a … remedy would be available for the most flagrant and patently unjustified sorts of [official] conduct," for "it is important, in a civilized society, that the judicial branch of the Nation's government stand ready to afford a remedy in these circumstances." 403 U.S. at 411. This case presents precisely such a circumstance. Caselaw also precludes application of discretionary function exception to the FTCA. Complaint is directed at governmental actions that involved no policy discretion and in fact violated mandatory regulations. Compl. ¶¶ 48, 66, 109-110, 124-125, 209, 243.

For the reasons set forth above, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss the Complaint in its entirety and grant such other and further relief as it may deem just and proper.

Dated:  New York, New York
August 6, 2021

By: /s/ Jaehyun Oh
Jaehyun Oh
The Jacob D. Fuchsberg Law Firm, LLP
*Attorneys for Plaintiffs*
3 Park Avenue, Suite 3700
New York, New York 10016
(212) 869-3500, ext. 245
j.oh@fuchsberg.com